(26 Misc. Rep. 522.)

PEOPLE ex rel. DRAKE v. COMMON COUNCIL OF CITY OF SYRACUSE et al.

(Supreme Court, Special Term, Onondaga County. February, 1899.)

1. MANDAMUS—PROCEDURE.

On an application for a peremptory mandamus, the facts alleged in the papers on which the application is founded will not be considered, where they are denied in the papers presented in opposition to the application.

2. SAME—DEMAND.

Mandamus will not lie to compel a city council to call on a civil service board for a list of names eligible for appointment to an office, where relator has not previously made any demand for such action.

3. MUNICIPAL CORPORATIONS—OFFICERS—APPOINTMENT—CIVIL SERVICE EXAMINATIONS.

Laws 1884, c. 410, as amended by Laws 1886, c. 29, authorizing an appointment to a municipal office of any one of three veteran soldiers obtaining the highest rating at a civil service examination, is repugnant to Const. art. 5, § 9, requiring appointments to be made according to merit and fitness ascertained by examination, providing that veteran soldiers are given the preference.

4. SAME.

Const. art. 5, § 9, requiring eligibility to an appointment to office to be determined by examination as to merit and fitness, is not complied with by multiplying a rating of merit by two, and declaring that the product shall be the rating for merit and fitness.

5. SAME—MANDAMUS.

Mandamus will lie to compel a city council and civil service commissioners to determine the man eligible for appointment to an office.

Application for mandamus, on the relation of Edward Drake, against the common council of the city of Syracuse, and Jacob C. Knauber and others, civil service commissioners, for a writ to require the common council to request the civil service commissioners to certify the name of a person as eligible to fill a certain office, and to furnish relator's name as such person. Denied.

William G. Tracey, for the application.
J. E. Newell, opposed.

HISCOCK, J. Upon this application, the following facts appeared. and were undisputed: ·

There is an office in and under the municipal government of the city of Syracuse which is known as "Custodian of the City Hall," which was created and is filled by appointment by the common council of said city, and which office is subject to the civil service laws of the state, and is embraced in Schedule B of the rules and regulations for admission to the civil service of said city, making it subject to competitive examination. On or about February 14, 1898, said office became vacant through the death of the then incumbent. On or about said last-mentioned date, the common council of said city adopted a resolution in substance requesting the civil service board of said city to certify to it the names of persons eligible for appointment to said office, and which resolution and request was duly communicated to said board. Thereafter, and on or about March 18, 1898, said civil service board held an examination, for merit only, of applicants for appointment to such office, and on or about said date certified to the common council of said city the following names of persons, with the respective ratings for merit only, as was duly ascertained and determined by said examination: Edward J. Arbogast, 49.40; George W. Herrick, 46.63; Edward Drake (the relator), 49.35; James H. Barry, 47.25. And said board further certified, as was the fact, that said Herrick, Drake, and Barry were veterans of the late Civil War and were honorably discharged from the military service of the United States. This report and certification by said civil service board was in accordance with the rules and regulations for admission to the civil service of the city of Syracuse then in force, and which had been duly approved by the civil service commission of the state of New York. Thereafter, and on or about March 31, 1898, chapter 186 of the Laws of 1898 became a law, which in effect repealed the provisions of chapter 428 of the Laws of 1897, which were in force at the time said examination aforesaid took place, and which in effect provided for an examination by said civil service commissioners as to merit, and for an examination by said appointing power, said common council of the city of Syracuse, as to fitness. Thereafter, in alleged pursuance to the provision of said first act (Laws 1898, c. 186), said civil service board prescribed a new set of rules and regulations, which were approved of as required by said act on or before October 11, 1898, and which, among other things, contained the following provision:

"All eligible lists, whether prepared after examination for both merit and fitness, or for merit only, existing prior to July 1, 1898, for appointment or promotion in the civil service of the city of Syracuse, shall be continued in full force and effect, except as otherwise provided in regulation 13, and may be certified to the person or persons holding the power of appointment or promotion; provided, however, that the rating given after an examination for merit only, shall be multiplied by two, and the result of such multiplication shall be the rating for merit and fitness as determined in regulation 8 of said rules and regulations, approved as aforesaid by the New York state civil service commission on October 11, 1898."

After the adoption of said rules and regulations, said civil service board prepared an alleged eligible list of persons eligible for appointment to said position of custodian simply by multiplying the rating for merit given to said four persons above named, respectively, by two, and the result of such multiplication was recorded upon the register of said civil service board as the rating for merit and fitness for each of said persons. As a matter of fact, no examination for fitness of any of said persons was ever held or given, and such rating was determined in the manner above stated. The purported rating given to said four persons, respectively, by said process, was as follows: Edward J. Arbogast, 98.80; Edward Drake, 98.70; James H. Barry, 94.50; George W. Herrick, 93.26. The relator has requested said civil service board to deliver to said common council another certificate for said office, showing said last purported rating, but said civil service board has declined to do so upon the ground that they had no authority to act until another request had been made by the common council for names for this office. Relator has also made application to the common council to be appointed to said office upon said purported rating he received from said board, but said council has not acted upon said application. Upon the 14th of February, 1898, when the common council adopted the resolution calling upon said civil service board for names of persons eligible for appointment to the office in question, the president of said board certified that there was no list of persons eligible to such appointment, and thereupon, with the approval of the mayor of said city, said common council made a temporary appointment to said office of the above-named Edward J. Arbogast, who ever since has been discharging the duties thereof. Said common council never made any examination, under chapter 428 of the Laws of 1897, of the above-named four persons for fitness. Some facts other than and different from those above stated are set forth in the papers upon which this application is founded, but, in accordance with well-settled rules, such allegations, upon such an application as this, are subject to all modifying and contradicting allegations in the papers presented in opposition to the application, and the allegations of which are controlling. People v. City of Brooklyn, 149 N. Y. 215, 43 N. E. 554. Neither are any allegations in the moving papers to be considered which are of mere conclusions of law. Id., 149 N. Y. 223, 43 N. E. 554. Upon these principal facts, then, the relator, as above stated, in substance requests that a writ of mandamus shall issue requiring said common council to call upon said civil service board for the name of a person eligible for appointment to the office in question, and requiring said civil service board to certify the name of relator alone as such eligible person.

So far as the present application seeks to compel the defendant common council to call upon the civil service board for a list of names or name of persons or person eligible for appointment to the office in question, it should be denied upon the ground that relator made no prior application to or demand upon such common council to take such action, which was refused by it. Such request upon and refusal by it should appear as a basis for this application. The essential

foundation of such an application as this against a public body or official is that it has failed and refused to discharge the duty of which performance is sought. In this case the relator alleges that he called upon said common council to appoint him from the list submitted to it by said civil service board hereinbefore mentioned; but it does not appear that he called upon it to request from said board a new list, made up in accordance with what he claims to be the law covering the matter, and which is the action upon the part of the common council now demanded by him. In accordance with the views hereinafter expressed, the council was justified at the time in refusing the demand which relator did, in fact, make upon it. Having demanded, and directed its attention to a demand for, something to which he was not entitled, this writ ought not to be allowed, requiring some different act, until the defendant has been fairly and clearly put in default by a prior demand for performance of such act. So far as the civil service board is concerned, relator demands that, upon the said rating already made, said board shall transmit to the common council his name as that of the person, and the only person, eligible for the appointment to the office in question. This demand is based upon the ground that his rating is the highest given to any veteran upon the list. Outside of the fact above referred to, that the appointing power—the common council—has not called upon said civil service board for a list subsequent to that already submitted, and which contained the names of relator and three other persons, with their respective ratings for merit only, as above mentioned, two other reasons are especially urged why relator is not entitled to have his name transmitted as the only person eligible for appointment to the office in question. The list as now made up by said civil service board, as the result of the only examination which it has held, and which can be the basis for transmitting relator's name as desired by him, contains the names of three veterans. It is urged in behalf of defendants that under the law as it stood at the time said list was made up, and as it now exists, said board had and has a right to transmit a list containing the names of three veterans instead of one, from which the appointment in question can be made. This contention that the civil service board is not limited to transmitting the name of only one veteran who has obtained the highest rating, as claimed by relator, but may transmit the names of the highest three veterans from which the appointing power may make its selection, is based upon chapter 410 of the Laws of 1884, as amended by chapter 29 of the Laws of 1886. Said act, in effect, provides that whenever it shall appear, after a competitive examination for appointment to a position in the civil service of the state or of the cities affected thereby, that more than one honorably discharged soldier is qualified to fill the same, the board authorized to report names for appointment shall certify to the appointing power all of such honorably discharged soldiers, specifying their respective grades, etc., limiting such certification, however, to not more than two names in excess of the number of places to be filled; and in all such cases the appointment shall be made from those, not exceeding three in number so certified, who were graded highest as the result of such

examination. There seems to be no doubt but what this law, if unimpaired, authorized the civil service board to report the names of three veterans from whom the common council might make the appointment in question, and would not limit such board to reporting the name alone of relator as having the highest rating of said three veterans, as claimed by him. The question, however, is presented, whether this law in question, providing for the certification of three names of veterans, is not in conflict with the constitutional provisions upon this subject, adopted after its passage. My attention has not been called by either counsel to any adjudication upon this question, but it seems to me that the constitution does, in effect, override and repeal this provision for the certification of three names. Section 9 of article 5 of the constitution, as it now stands, provides as follows:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which appointment or promotion may be made."

The plain intent and purpose of this provision is to make the basis of appointments and promotions in the civil service, as a general rule, where practicable, competitive, with, of course, the necessary implication from that competition that the person standing highest shall receive the appointment. The exception to this rule of appointment by competition is in the case of the honorably discharged soldier and sailor, who, having secured a place upon the list for his name, is entitled to a preference without regard to his standing on the list. The practical interpretation and purpose of this exception again is that the soldier whose name is upon the list shall have preference in appointment before a civilian, even though the latter has the higher standing. But it is necessary for the veteran, in the first instance, to secure, under the law, a place upon the list for his name; and when, two or three veterans having obtained places for their names upon the list, it is to be decided which one shall obtain the preference secured by the constitution, I see no reason why the principle of competition, as among themselves, should not apply, and why that one of the veterans having the highest rating should not secure the preference and the appointment, rather than that three names should be transmitted to the appointing body, giving it the power of selection, and destroying to that extent the principle of competition. This view does not in any way impair or infringe upon the preference to be given in appointments to a veteran under the constitution, the provisions of which are clear and absolute upon that point. It simply applies the rule of competition, which is the fundamental basis of civil service appointments, to the determination of what veteran shall receive the preference where there are two or more striving for the appointment. Any other construction of this provision of the constitution would permit a virtual abolition of this fundamental civil service idea of competition, as between veterans themselves;

for, of course, if, under this article of the constitution, a law is proper which permits or directs a civil service board to return the names of three veterans to the appointing body, a statute would be equally constitutional which authorized the return of twelve or twenty names. And in this manner, while it is true a preference would be secured to some veteran, the question of what veteran that should be would be left entirely to the caprice of the appointing power, and would not be at all subject to the fixed and just rule of competition. This construction seems to be in accordance with the general principles applied to the appointment of veterans in the civil service. While, as stated above, my attention has not been called to any case specifically settling this point, the doctrine has been broadly declared by the court of appeals in construing the article of the constitution hereinbefore quoted,—that, except as otherwise expressly provided by it, veterans are to be subject to the same test of competition as other citizens in making civil service appointments. In re Keymer, 148 N. Y. 219, 42 N. E. 667. In the case cited, the court of appeals had under consideration an act of 1895, which provided in substance that, as to honorably discharged soldiers and sailors, competitive examinations should not be deemed practicable or necessary in cases where the compensation did not exceed four dollars per day. It held this unconstitutional, as violating the principle of competitive examination enjoined by the provision of the constitution under review in this case. Within that decision and the principles laid down in reaching it, the statute invoked by defendants here is in violation of this article of the constitution. It provides that all of the veterans who shall obtain a place upon the list, to the number of three (and, as I heretofore stated, that number might just as easily be made larger), shall be entitled to have their names sent to the appointing power. The effect of this is that such appointing power may select for the appointment the veteran who is rated third, instead of him who stands highest. In this manner the principle of competition is evaded, and the intent and purpose of the constitution violated. Upon this point, therefore, the relator's contention that the name of the veteran standing highest upon the list, rather than those of the three standing highest, should be certified by the civil service board, is well founded.

I come now to the second objection urged by defendants to the granting of this writ, and which seems to me to be not only a serious, but an effectual, one. The article of the constitution already quoted requires, where practicable, a competitive examination of candidates for appointment, both as to merit and fitness. As already stated, the position in question was in the competitive class, appointments thereto being subject to such competitive examination. The distinction between and separation of the qualities of merit and fitness which are to be subjected to such competitive examination are perfectly well recognized. It is well settled that an examination for merit alone does not dispense with or take the place of an examination for fitness, and that a person who has stood the test of examination for merit may still not be a proper person for appointment under the test of fitness. At the time the list was made up by the

civil service board upon which relator's name appears, the civil service statutes provided that said board should examine for merit, and the appointing power, namely, the common council, for fitness, and, as a matter of fact, the only examination had in making up said list was the one for merit. No examination at all has ever been had for fitness. After the virtual repeal of the law allowing said common council to examine for fitness, the defendant civil service board adopted a regulation which, as it claims, allowed it to substitute, for an actual examination for fitness, a mere multiplication by two of the rating for merit. The rule which was adopted upon this subject, as applied to this case, provided "that the rating given after an examination for merit only shall be multiplied by two and the result of such multiplication shall be the rating for merit and fitness as determined in regulation 8," and this was what actually was done in this case. The ratings for merit of the relator and his companion applicants had been given before this change in the law. Subsequently, and after such change, the total ratings for merit and fitness were obtained and given by said board for simply multiplying such previous ratings by two, and there has never been any test by said board or any one else to ascertain whether any one of said candidates possesses the necessary qualifications of fitness. It does not seem to me to require any argument or extended reasoning to show that such operation of said board was a parody upon the principles of civil service, and a violation of the plain requirements of the constitution, and that the rating thus given and obtained is and ought to be valueless for any purpose of appointment. The office of custodian is concededly one which is subject to an honest and intelligent application of the principles of civil service. The two requirements demanded of a candidate for appointment to it by the highest authority we have—the constitution of the state—are merit and fitness. And that same high authority points out how those qualities of merit and fitness shall be ascertained, namely, by competitive examination. It is perfectly clear that the rating of an applicant as to one of these requirements—fitness—cannot be legally obtained by multiplying by two his standing upon another subject which has no relation to it. The multiplication table is not a proper or adequate substitute for the competitive examination required by the constitution. The only difficult thing to understand is why this particular process of making up a list for civil service appointments should have been adopted, rather than some other equally ingenious and utterly irrelevant method; but speculation upon that point is not specially material here.

It is urged, however, by the relator, that none of the defendants are in a position to urge the illegality of this action upon the part of the civil service board as a defense to this motion; that the common council, not being now, upon this application, asked to make an actual appointment from the list so made up, cannot raise the objection; that the civil service board itself cannot urge its own wrong and fault and illegal action as a defense. There may be some force in the suggestion made as to the latter body; but the common council is a party to this application, and has a right to have submitted to it names for appointments in a legal manner, and, so

far as appears, has not been a party to the present methods. It would therefore seem that it was in a position to assert this defense, and that there was no object to be gained in requiring the submission to it of names for this appointment obtained in an illegal way. Aside from this, however, I have no doubt that the court has the power, upon its own motion, to refuse to grant an application which rests for its support upon a violation of a constitutional provision and of a well-defined and commendable public policy.

It has been further suggested by the defendants that a writ of mandamus is not the relator's proper remedy; that, another person being now in the enjoyment of the office in question, resort must be had to quo warranto or other proceedings. While the decision of this question is perhaps not necessary to the disposition of this application, I regard the position of the defendants as unfounded. The position is concededly subject to the application of civil service laws, and, if the bodies charged with the administration of those laws fail or refuse to act, they may under proper circumstances, and up to the extent now asked for upon this application, be put in motion by a writ of mandamus. The question is not now presented of obtaining possession of the office by these proceedings. It is simply asked that the common council and the civil service board shall, through proper processes, ascertain the man eligible for appointment to the office. If it be conceded that such man, when appointed, would have to resort to quo warranto proceedings to obtain possession of it, he could not institute those proceedings until the steps now asked for had been taken, and up to that hour I think action may be enforced by a writ of this character. In re Keymer, 148 N. Y. 219, 42 N. E. 667; People v. Board of Trustees of Village of Ballaston Spa, 19 App. Div. 567, 46 N. Y. Supp. 564.

While thus holding with relator upon part of the proposition urged by him, I am still led to deny his application for the writ upon the other grounds stated,—that the common council is not so in default as to be subject to it, and that the list from which he seeks to have his name certified for appointment was improperly and illegally made up by the civil service board.

Ordered accordingly.