(28 Misc. Rep. 1.)

### In re BALCOM.

(Supreme Court, Special Term, Broome County.   June, 1899.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE—VALIDITY.
   . Under Const. art. 5, § 9, requiring appointments in the civil service of all municipalities to be made according to fitness, to be ascertained by competitive examinations, Laws 1899, c. 370 (Civil Service Law), requiring appointments in the classified service of municipalities to be made from those graded highest as the result of an open, competitive examination conducted by the municipal civil service commission, is not repugnant to Const. art. 10, § 2, requiring municipal officers whose election or appointment by the constitution is not provided for to be either elected or appointed by the authorities designated by the legislature, in that it deprives the municipal authorities of the power of appointment given them by the constitution, since the two provisions must be construed together.

2. SAME—VETERAN SOLDIERS—PREFERENCE AMONG THEMSELVES.
   Const. art. 5, § 9, provides that all appointments in the civil service shall be made according to fitness, to be ascertained by competitive examination, but that honorably discharged veterans of the late Civil War shall be entitled to preference, regardless of their standing on any list from which the appointment or promotion is to be made. Laws 1899. c. 370, requires such appointments to be made according to merit, and provides that honorably discharged veterans of the Civil War shall be entitled to preference, without regard to their standing on any list from which the appointment may be made, if their qualifications and fitness have been ascertained as provided therein and by the rules made in pursuance thereof, and that any reference in the act, or in rules passed in pursuance thereof, to the person standing the highest on a list of persons eligible to be appointed to an office, containing the names of persons entitled to preference, shall be deemed to indicate the one standing highest on the list of those entitled to preference. The rules of the municipal civil service commission provide that the fitness of candidates to certain offices shall be determined by competitive examination, and appointments shall be made for a probationary term. *Held,* that where the list of eligible names for a municipal office, to which appointment is to be made from a list to be ascertained by competitive examination, contains the name of more than one veteran, the one standing highest on the list is entitled to preference as against the others.

Application by George N. Balcom for peremptory writ of mandate to the board of street commissioners of the city of Binghamton. Granted.

Rollin W. Meeker, for relator.
Almeron M. Sperry, for respondents.

LYON, J.   This is an application by the relator, George N. Balcom, for a writ of peremptory mandamus, requiring the board of street commissioners of the city of Binghamton to appoint the relator to the position of superintendent of streets and city property for a probationary term of two months.   The facts are conceded by both parties, and, so far as they are material to this decision, are as follows:   The position of superintendent of streets and city property became vacant February 21, 1899, by the expiration of the term of office of the then incumbent, and is still vacant.   The charter of the city of Binghamton provides for the appointment of the superintendent of streets and city property by the board of street commissioners of the city, which board consists of four members.   On April 24th

the municipal civil service commission, at the request of the board of street commissioners, certified to the board, for appointment to the position of superintendent of streets and city property, an eligible list prepared by said commission as the result of an open, competitive examination, which list contained three names, with the standing of the respective candidates, as follows: Herbert T. Bolles, $96^9/_{10}$; George N. Balcom (the relator), $89^{13}/_{20}$; John M. Seabury, $83^1/_5$. The civil service commission in its certificate stated, as is the fact, that said Balcom and Seabury are honorably discharged soldiers from the army of the United States in the late Civil War. Since receiving such certificate of the municipal civil service commission, the board of street commissioners has held several regular meetings at which resolutions have been offered appointing the relator, George N. Balcom, to the position of superintendent of streets and city property, which resolutions have received two affirmative and two negative votes, as have also resolutions for the appointment of John M. Seabury to such position. At a late meeting of the board of street commissioners the relator both verbally and in writing demanded his appointment, and the resolution appointing him, offered immediately following his demand, received the same tie vote, whereupon the relator made this application to the court for a writ of peremptory mandamus. The application for the writ is opposed mainly upon two grounds,—one of which is that the civil service law (chapter 370 of the Laws of 1899) which became a law April 19th is unconstitutional, in that it is violative of the provisions of section 2 of article 10 of the constitution of the state, which is as follows:

"All city, town and village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose."

This contention that the civil service law is unconstitutional is based upon the claim that such law, in requiring the appointment for a probationary term of a specified person, to wit, the person standing highest upon the eligible list, deprives the municipal authorities of the power of appointment given them by such clause of the constitution. This application is also opposed upon the ground that neither the clause of the constitution relating to civil service appointments nor the new civil service law requires, as between veterans, the appointment of the one standing highest upon the eligible list, but that a discretion is vested in the appointing board as to which veteran shall be appointed; and, in justification of the action of the two members voting in the negative upon the resolution for the appointment of the relator, the affidavits of such two members are submitted, in which they state that their action in opposing the appointment of the relator is based upon their belief that the applicant Seabury is possessed of qualifications for the office superior to those of the relator.

First, as to the constitutionality of the civil service law of 1899: The contention that this law is unconstitutional, as violating section 2 of article 10 of the constitution, cannot be successfully maintained. Section 9 of article 5 of the constitution relating to civil service appointments, which is hereinafter set forth at length, is also a clause

of the constitution of the state. The two clauses must be construed together. The provisions of the civil service law of 1899 relating to the selection of appointees are entirely consistent with the provisions of the civil service clause of the constitution. A similar question was raised in the case of Rogers v. Common Council, 123 N. Y. 173, 186, 25 N. E. 274, and the court of appeals there held that the provisions of the civil service act of 1883, as amended in 1884, was not violative of section 2 of article 10 of the constitution, and that the powers of the local authorities to select city officers, within the meaning of this clause of the constitution, was not subordinated thereby to those of the state authorities. Such decision was rendered, too, prior to section 9 of article 5 becoming part of the constitution, by the adoption of the constitution proposed by the convention of 1894. Furthermore, it may not be irrelevant to call attention to the fact that this application is not one to compel the appointment of the relator to the position of superintendent of streets and city property for the two-years term provided for by the charter of the city, but simply to compel the appointment of the relator for the probationary term of two months fixed by the rules established by the municipal civil service commission.

Secondly, as to the ground of opposition to the application that the board of street commissioners is not required, as between veterans, to appoint the one standing highest upon the eligible list, but that the board has a discretion in making the appointment for the probationary period: In August, 1898, the municipal civil service commission established certain rules and regulations which were duly approved by the civil service commission of the state in September, 1898, and these rules and regulations, so far as not inconsistent with the civil service law of 1899, were retained by the saving and repealing clauses of that law, and are still in force. Those rules and regulations classified the position of superintendent of streets and city property, under Schedule B, as one for which it was practicable to determine the merit and fitness of applicants by open, competitive examination, and, among other things, provided that the municipal commission might in the examinations give such relative importance to the different matters of examination, or to experience, occupation, or training, as to them might seem fit; also that an eligible list should be prepared by the commission from time to time as the needs of the service should require, upon competitive examinations for each of the grades in Schedule B, from the candidates who have been found to be duly qualified for the position for which such eligible list is to be prepared, and in the order of merit as shown by the respective percentages of their aggregate markings; also that persons who have been honorably discharged from service in the army or navy of the United States in the Civil War, whose names are upon the eligible list, shall be preferred in appointments to such positions, under the provisions of the constitution of the state of New York, or any laws of the state of New York passed pursuant to the requirements of the constitution; also that every original appointment or employment in Schedule B should be for a probationary term of two months, at the end of which time, if the conduct and capacity of the person should have been found sat-

isfactory, the probationer should be absolutely appointed or employed, but otherwise the appointment should cease.

Section 9, art. 5, of the constitution of the state of New York provides as follows:

"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness, to be ascertained so far as practicable by examinations which, so far as practicable, shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States, in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without. regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

Chapter 370 of the Laws of 1899, known as the "Civil Service Law," became a law April 19th,—five days previous to the certification of the eligible list by the civil service commission to the board of street commissioners. That act, among other things, provides that "all appointments or employments in the classified service shall be for a probationary term, not exceeding the time fixed in the rules"; that "appointments shall be made to, or employment shall be given in all positions in the competitive class, * * * by appointment of those graded highest in open competitive examinations conducted by the state or municipal commission, except as herein otherwise provided"; that "all merit and eligible lists of persons examined prior to the passage of this act, under the civil service rules and regulations in force at the time of such examination, shall be continued in full force and effect, as if formed under the provisions of this act, subject, however, to such reasonable regulation and revision as the rules shall prescribe"; that "honorably discharged soldiers, sailors and marines from the army and navy of the United States in the late Civil War, who are citizens and residents of this state; shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made, provided their qualifications and fitness shall have been ascertained as provided in this act, and the rules and regulations in pursuance thereof. * * * Whenever any list of eligible persons prepared under authority of this act shall contain the names of honorably discharged soldiers, sailors and marines entitled to preference as aforesaid, any reference in this act, or in the rules and regulations in pursuance thereof, to the persons standing highest on such list, shall be deemed to indicate those standing highest of those entitled to preference by the provisions of this section."

It cannot for a moment be questioned that Balcom and Seabury, being honorably discharged soldiers of the late Civil War, are, by virtue of the provisions of the civil service clause of the constitution, and of the express provisions of the civil service law of 1899, entitled to preference in appointment over any person not a veteran, whose name appears upon such eligible list, although such person may have a higher standing. The question to be decided is not whether Herbert T. Bolles, having a higher standing upon the eligible list than either Balcom or Seabury, has the right to the probationary appointment; but the question to be decided is whether, Balcom and Seabury

both being veterans, Balcom is entitled, by reason of his higher standing on the list, to appointment in preference to Seabury. While it is not necessary to discuss at length the chief purposes of the civil service enactments, and the reasons which have lead to their adoption, it is sufficient to know that the main object sought during the 30 years of civil service agitation has been the placing of appointments outside the dominion of political influence and favoritism, and making each appointment depend, as far as possible, solely upon the merit and fitness of the individual candidate. Such being the conceded purpose of civil service legislation, it is difficult to see why veterans, whose names·often constitute a very considerable proportion of those at the head of the list of eligible candidates, by reason of' the preference given them in appointment without regard to their standing, should be exempted, as between themselves, from the operation of a general civil service law providing for the appointment of the veteran standing highest for merit and fitness, and the civil service provisions be thus nullified to a very considerable extent, and the alleged evils accompanying political affiliations and favoritism have full effect. The section of the constitution which provides that honorably discharged soldiers shall have preference in appointment also declares, in the same sentence, that appointments shall be made according to merit and fitness, to be ascertained by competitive examination. The section declares that appointments—that is, all appointments—shall be made for merit and fitness, and neither expressly nor impliedly exempts the veteran from such examination. Not only does the constitution require that all appointments shall be made according to merit and fitness, but the civil service law also expressly so provides, as hereinbefore stated. This law following the provisions of section 9 of article 5 of the constitution provides that appointments—that is, all appointments—shall be of those graded highest in open, competitive examination. The veterans having preference on the list over candidates not veterans, the law consequently requires the appointment of the veteran standing highest on the list. The civil service law admits of no other construction, and there can be but one highest on the list. But the civil service law, with the evident design of removing all possible doubt as to the intended construction of the provisions of the act as to preferences in the appointment of veterans, as between themselves, goes further, and in section 20 provides, as hereinbefore stated, that, whenever any list of eligible persons shall contain the names of honorably discharged soldiers entitled to preference as aforesaid, any reference in the act, or in the rules and regulations in pursuance thereof, to the persons standing highest on such list, "shall be deemed to indicate those standing highest of those entitled to preference" by the provisions of the section. It is difficult to see how language could more plainly express that, as between veterans, the appointment must be made of the one standing highest upon the list. But the question as to whether the requirements of the civil service law relative to appointments applies to veterans has been already determined by the courts. The court of appeals, in the case of People v. Lyman, 157 N. Y. 368, 52 N. E. 132, held that a rule prescribing a probationary appointment was proper and legal as applied to a vet-

eran, and that the appointing power was justified in terminating his service at the close of the probationary period, and refusing him an appointment. The court in this case also held that the appointment for a probationary period, in addition to a competitive examination, is a proper and reasonable method to be employed in determining the merit and fitness of the candidate and his qualifications for the position. In the case of People v. Common Council of City of Syracuse (Sup.) 57 N. Y. Supp. 617, the court held that the section of the constitution hereinbefore quoted requires that, as between veterans, the veteran standing highest on the list must receive the appointment. This decision is precisely in point upon the question under consideration, and is based solely upon the ground that the constitution so requires, and was made before the passage of the civil service law of 1899, requiring the appointment, for the probationary period, of the person standing highest on the list. Rule 1, prescribed by the state civil service commission in compliance with the requirements of the new civil service law of May 18th, and approved by the governor a few days since, following the requirements of the constitution and the civil service law, provides that "appointments shall be made   *   *   *   in all positions in the competitive class   *   *   *   by the appointment of the person graded highest on the   *   *   *   eligible list."

In view of the provisions of the constitution and of the civil service law, and under the decisions of the courts, the relator, George N. Balcom, standing highest of those preferred upon the eligible list, is entitled to appointment as superintendent of streets and city property for the probationary period provided for in rule 22 of the municipal civil service commission, which reads as follows:

"Every original appointment or employment in Schedule B shall be for a probationary term of two months, at the end of which time, if the conduct and capacity of the person shall have been found satisfactory, the probationer shall be absolutely appointed or employed, but otherwise his appointment shall cease."

I am convinced that the two members of the board of street commissioners who have voted in the negative upon the resolutions appointing the relator have acted conscientiously, and in the belief that their action was fully warranted; and, in view of all the circumstances, no costs ought to be allowed.

The attorney for the relator will prepare and submit to the attorney for the defendants an order that a writ of peremptory mandamus issue in accordance with this opinion.