(22 Misc. Rep. 1.)

### MORRIS v. MURRAY.

(City Court of New York, General Term. December 11, 1897.)

WORK AND LABOR—EVIDENCE.

In an action to recover for work and materials, plaintiff's testimony that they were rendered and furnished upon defendant's promise to pay, and not upon that of a certain association of which defendant was an employé, was supported by a series of telegrams in which defendant repeatedly said that "I will pay," etc., and by evidence that plaintiff had specifically refused to deal directly with the president of the association. Held, that a verdict for plaintiff was sustained by the evidence.

Appeal from trial term.

Action by Fritz Morris against George Murray. From a judgment and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before CONLAN and O'DWYER, JJ.

Herbert C. Smyth, for appellant.
David Leventritt, for respondent.

CONLAN, J. Appeal from a judgment entered on the verdict of a jury, and from an order denying a motion for a new trial. The action is brought to recover $500, with interest, for certain work, labor, and materials furnished by the plaintiff. The sole issue, as conceded by the defendant, was whether the work done and materials furnished should be charged against the defendant or against the Long Beach Association, of which the defendant was an alleged employé. Besides being an employé of the association referred to, he was the proprietor of the Sherwood Hotel, in New York City. The plaintiff says he first called upon the defendant at the Sherwood Hotel, with reference to the work in question, and was informed that it was then a little early in the season, and that the

plaintiff would hear from him later. He called later upon the defendant, and subsequently accompanied him to Long Beach, to make an examination of the proposed work; and, as a result of this examination, the goods were selected, and sent to the plaintiff's place of business, and, after being renovated, were reshipped to the defendant in boxes or barrels, there being four packages in all. The plaintiff further says that a statement of the charges for the work to be done was made out and delivered to the defendant, and this is not disputed; and, a discussion arising as to the figures in this statement, it was agreed that 8 per cent. should be deducted from the amount for cash, but the same appears to have been restored afterwards for delay in payment. The plaintiff then continues: "I asked Mr. Murray for whom I was doing that work, and he told me I was doing it for him, and that he would pay me." Plaintiff explains his reasons for this action, by saying that he had done the work for the hotel association the year previous, and had taken the pay out in board for himself and family, and that, in a conversation with Mr. Ames, the president of the association, in reference to the work for the new year, he had been informed that it would have to be taken out in board, and for that reason he did not confer further with him on the subject, but made all of his subsequent arrangements with the defendant. It is proper to say that the defendant's version of the matter seeks to negative the idea of any intention to incur a personal liability for this bill; but the plaintiff, to corroborate his statement of the transaction, introduced in evidence a series of telegrams, sent by the defendant personally, with reference to the delays in payment of the bill, and making repeated promises to pay the amount; and these telegrams, as the plaintiff insists, are an additional reason for insisting that the work was done for the defendant, and the plaintiff was to look to him for payment.

The defendant does not appear to have made any effort to induce the belief on the part of the plaintiff that the obligation to pay was one of the association, and not of himself; for in all of these telegrams to the plaintiff he uses, unqualifiedly and without stint, the expression, "I will pay," etc., until on the 20th day of August, 1896, when he suddenly changed the form of his communication by writing as follows, namely: "In behalf of the Long Beach Association, I cannot promise to make payments," etc.; and it appears that the hotel was to close for the season within a day or two thereafter, and did close on the 22d day of August, two days after the date of this letter. There is a significance in these expressions and dates and events that cannot escape notice. There does not appear to have been in the mind of the defendant any desire or intention on his part to repudiate the obligation as one personal to himself during all of the period down to within a day or two of the closing of the season's business, when, for the first time and for some unexplained reason, he changed the form of his communication to the plaintiff from the personal pronoun to the "Long Beach Association," as we have already seen. The goods had been received from the defendant direct, and had been reshipped to him, and so entered in the bill of lading; and we do not find anywhere in the record that there was

any intimation given to the plaintiff down to the 20th day of August, when the letter in behalf of the Long Beach Association was written and sent, that the obligation to pay was to be treated as of the association, and not of the defendant.

The plaintiff's position, as he has asserted it, is, we think, strengthened by the fact that he did the work for the association the previous year, upon an agreement to board out the price. He personally declined to accede to these terms for the new year, refused to board out a new bill, and, as he plainly puts it, abandoned all negotiations with Mr. Ames, president of the association. For the purpose, apparently, of showing the relations that existed between the defendant and the association, and to shift the defendant's liability, if that were possible, it was attempted to prove the terms of an alleged contract between them; but as the same was not brought to the knowledge of the plaintiff at .the time the work was ordered, and he not being a party to it, it was properly objected that it had no binding force on him with relation to the questions in dispute. Thus, we see that there was but a single question of fact to be determined between the parties, and this was fairly and properly submitted to the jury, under the exceedingly fair charge of the trial judge; and that question appears to have been determined adversely to the defendant. For the reasons stated, we think the judgment should be affirmed.

Judgment affirmed, with costs.

O'DWYER, J., concurs.