MABEL O. WORMACK, INDIVIDUALLY, AND NORMAN WORMACK HER HUSBAND, AND INDIVIDUALLY, PLAINTIFFS-RESPONDENTS, v. WILLIAM J. HOWARD, T/A HOWARD TRANSFER CO., DEFENDANT, AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued April 26, 1960—Decided June 28, 1960.

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for defendant-appellant (*Mr. David D. Furman,* Attorney General, attorney; *Mr. Theodore I. Botter,* of counsel).

*Mr. Philip G. Steel* argued the cause for plaintiffs-respondents.

The opinion of the court was delivered by

SCHETTINO, J.   Appeal was taken from an order directing defendant Unsatisfied Claim and Judgment Fund Board to pay plaintiffs the sum of $8,000 plus costs being the total amount of judgments recovered by plaintiffs against defendant, William J. Howard.   We certified the cause on our own motion while the appeal was pending in the Appellate Division.

In January 1959 plaintiffs were in a vehicular accident in Pennsauken, New Jersey with a tractor-trailer owned by and operated on behalf of defendant William J. Howard, trading as Howard Transfer Co. of North Carolina.   At the time of the accident the tractor-trailer was driven by Edward E. James of Greenville, North Carolina.   Action was promptly instituted by plaintiffs in our Superior Court, Law Division, against Howard.   After defendant failed to file an answer, a default was entered on plaintiffs' request,

and judgments were entered on May 29, 1959 for both plaintiffs. Although the driver's name and address were known to plaintiffs, he was not made a party to the action.

On July 21, 1959 plaintiffs obtained an order to show cause for payment from the Unsatisfied Judgment Fund pursuant to *N. J. S. A.* 39:6–61 *et seq.,* and on October 23, 1959 the trial court ordered payment of the judgments by the Fund.

Before us the Fund resists the order to pay the judgments on the grounds that defendant Howard was covered by insurance at the time of the accident and therefore plaintiffs are barred from recovering under *N. J. S. A.* 39:6–70(*f*) and that plaintiffs are also barred for failure fully to pursue and exhaust all available remedies for recovering their judgment against the other party involved in the accident, and for failure to comply with other provisions of *N. J. S. A.* 39:6–70 and 71. Although not listed in the statement of questions involved, the Fund also seeks the opportunity to question the amount of the judgment the plaintiffs obtained. *N. J. S. A.* 39:6–74.

Plaintiffs contend that the Fund is estopped from raising all but the first of these issues as they were not raised at trial.

The Legislature has specified certain requirements which must be complied with by an applicant (*N. J. S. A.* 39:6–70 and 71) and sets forth two situations where relaxation is permitted. *Subsections* 70(*h*) and 70(*i*). There, however, the applicant must prove to the satisfaction of the court that it was impossible to comply with those provisions.

In *Giles v. Gassert,* 23 *N. J.* 22, 34 (1956), we noted that "The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy." But while liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature for as was said in *Dixon v. Gassert,* 26 *N. J.*

1, 9 (1958) "It is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body in order to properly effectuate the legislative design." And, at *page* 8: "There is no absolute indemnity provided for. \* \* \* the statute does not reflect an intention to make every claimant completely whole \* \* \*." Rather it provides some measure of relief to those persons who come within the class intended to be protected. *Corrigan v. Gassert,* 27 *N. J.* 227, 233 (1958). But before coverage can be extended to any applicant, he must clearly demonstrate that he is a member of the class for whose benefit the Fund was established. The following observation from *Re Sinclair v. Woodward,* [1952] 1 *D. L. R.* 398, 400 (*Ont. Ct. App.* 1951) is here pertinent:

> "But that Fund is not available to every judgment creditor. It is available only in cases falling within the provisions of the Act. The Fund is made up of contributions from members of the public, and the Court is, in a sense, the guardian of the Fund. Therefore, much care and vigilance are required before the Court can be satisfied that the conditions of the statute have been fulfilled, or before it may dispense with the necessity for complying with any of the statutory requirements in a particular case. Every provision of the Act designed for protection of the Fund should be given full consideration and effect. The burden is on a judgment creditor making application for an order directing payment out of the Fund to show that the case *clearly falls within the provisions of the Act,* and that he is entitled to an order directed to the Minister requiring him to make a payment from the Fund." [Emphasis added]

Our law provides for the creation of a fund in part by charging extra fees to those registering uninsured motor vehicles and in part by levying assessments against liability insurance companies doing business in New Jersey. *Section* 63. The fund is held in trust for the stated purposes and for the costs of administration. *Section* 88. It is administered by the Unsatisfied Claim and Judgment Fund Board consisting of the Director of Motor Vehicles, the Commissioner of Banking and Insurance, and four representatives of insurance carriers. *Section* 64. It details the circum-

stances, conditions and procedures under which a person who has recovered a judgment may resort to the Fund for some measure of relief. *Sections* 65, 69, 70, 71. The law imposes conditions precedent which must be met before plaintiffs can become beneficiaries and before liability of the Fund attaches. The main provisions designed to protect the Fund are contained in *Sections* 70 and 71.

The applicant is required to show (*Section* 70) that (a) the injury is not compensable under the workmen's compensation law; that the applicant (b) is not a spouse, parent or child of the judgment-debtor; (c) is not a guest occupant of the automobile owned or driven by the judgment-debtor; (d) was not at the time of the accident operating or riding in an uninsured vehicle owned by him or his spouse, parent or child, or operating a vehicle in violation of an order of suspension or revocation; (e) gave the Board the notice of claim as required by *Section* 65; and (f) that the judgment-debtor was not insured at the time of the accident under a policy of automobile liability insurance by the terms of which the insurance company is liable to pay in whole or in part the amount of the judgment. It also requires that the applicant (g) has obtained a judgment, and he must specify the amount thereof and amount owing; (h) has caused execution to be issued on the judgment and that the execution has been returned unsatisfied, either in whole or in part; if paid in part, he must state "the balance remaining due on the judgment"; (i) has caused the judgment-debtor to make discovery under oath as to his assets and insurance coverage; (j) has made all reasonable searches and inquiries as to the judgment-debtor's assets; (k) has discovered no assets, or insufficient assets, to satisfy the judgment. It continues (l) that the application must not be made directly or indirectly on behalf of an insurer; and (m) the applicant must show whether or not he has recovered a judgment against any other person in respect to such injuries and the amounts received on the judgment or by way of settlement.

Under *Section* 71, the court shall order payment if it is satisfied that all of the provisions of *Section* 70 are complied with and if it is shown that the applicant has "fully pursued and exhausted all remedies available to him" by commencing action "against all such persons against whom the applicant might reasonably be considered as having a cause of action" and prosecuting every such action in good faith to judgment and by taking all reasonable steps available to him to collect the judgment and by applying the proceeds of any judgment or recovery towards satisfaction of the amount due upon the judgment for payment of which the claim is made. *Cf. Elder, The Unsatisfied Judgment Fund and the Irresponsible Motorist,* (1953-1954) *Current Trends in State Legislation* 47, 111-122.

■ The Fund may, of course, stipulate that plaintiffs have complied with the requirements. Of the challenges urged before us, only the failure to comply with *subsection* 70(f) was pressed before the trial court. In effect, the Fund stipulated (although not in specific words) that plaintiffs had complied with the other requirements.

We limit our decision to that issue.

■ At the time of the accident the defendant William J. Howard was insured by the Canal Insurance Company and on April 22, 1959 defendant notified the Security Responsibility Section of the Division of Motor Vehicles of this coverage pursuant to *N. J. S. A.* 39:6–23 *et seq.* Some inference appears that notice of the receipt of this information was forwarded to the insurance company and no denial of coverage was received by the Section. However, the insurance company by affidavit of one of its vice-presidents disclaimed liability on the ground that its insured had failed to cooperate with it in that defendant did not give it timely notice of the accident, nor did defendant ever forward to it the copy of the summons and complaint served upon defendant Howard. Notice of these facts was communicated to the Fund on or about July 10, 1959 by plaintiffs' attorney.

The Fund thereupon promptly assigned counsel to oppose the claim for payment. It contends that it did not act sooner because prior thereto as well as at the time default judgments were entered, it believed that defendant Howard was insured.

After the judgments against Howard were obtained, plaintiffs had no writ of execution issued against defendant and did not pursue the possibility of recovering from the insurance company as the disclaimer was accepted by plaintiffs as final.

We are satisfied that on the present record plaintiffs' actions in investigating defendant's coverage were so deficient that it cannot be said that plaintiffs have shown that there was no insurance payable as a result of the accident. *Subsection* 70 (*f*). On this issue plaintiffs relied solely upon the affidavit of the insurance company's vice-president. But in effect all this affidavit did was to allege the existence of a disclaimer and the claimed justifications for it. Plaintiffs made no attempt to establish whether the disclaimer might not be based upon frivolous or non-existent facts. Plaintiffs' duty goes beyond assuming the truthfulness of this self-serving affidavit.

There are many issues suggested arising out of defendant's insurance policy such as the effectiveness of the disclaimer, the insurance carrier's obligations under North Carolina or New Jersey law or under both, the effect of the I.C.C. license held by Howard and other corollary issues stemming therefrom. Many of these issues can be clarified only when the policy is produced.

Before the trial court plaintiffs' attorney contended that he could not sue the Canal Insurance Company in New Jersey. The Fund's attorney stated that he was advised that the insurance company had executed and delivered a power of attorney to the Director of the Division of Motor Vehicles of the State of New Jersey to accept service on its behalf in any action arising out of a motor vehicle accident occurring in New Jersey in which any one of its insureds

was involved. A copy of the power of attorney has been printed in the appendix. As we read its provisions, plaintiffs could have sued the Canal Insurance Company in New Jersey.

Ordinarily, a petition for payment out of the Fund could not be made until plaintiffs have complied with the requirements of *Sections* 70 and 71. Thus, they would have had to sue the insurance company in a prior and separate suit. However, in view of the history of this case and in order to avoid multiplicity of litigation, we permit plaintiffs to join the insurance company in the present action, have the issues involving plaintiffs and the carrier first tried and if judgment is entered in favor of the carrier, plaintiffs may then proceed against the Fund.

It may be that when all the evidence has been submitted, a problem would be presented as to whether the Legislature intended to deprive an otherwise eligible person of the benefits of the Fund even where the debtor was insured at the time of the accident but for some reason the insurance was not applicable to the particular accident. *Cf. Pascoe v. Provincial Treasurer of Manitoba,* 26 *West. Weekly R.* 640 (*Man. Q. B.* 1958), appeal dismissed 27 *West. Weekly R.* 393 (*Man. Ct. App.* 1959). We cannot consider this issue in the abstract.

As to all other issues admittedly first raised before us, the Fund may apply to the trial court for permission to litigate them and the trial court, after considering the interest of the public in the integrity of the Fund and the equities of the case, may decide whether to grant the application. *Cf. R. R.* 4:62–2.

Reversed and remanded for action not inconsistent with this opinion with costs to abide the outcome.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For affirmance*—None.