74 N.J. Super. 138 (1962)
180 A.2d 710
ADELAIDE C. PARROT, PLAINTIFF-RESPONDENT,
v.
GEORGE CHISELKO, DEFENDANT.
UNSATISFIED CLAIM AND JUDGMENT FUND BOARD OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 19, 1962.
Decided May 4, 1962.
*139 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Russell Fleming, attorney for respondent.
Messrs. Scerbo, Hegarty, Mintz, Glickman, Kobin & Howe, attorneys for appellant (Mr. Frank C. Scerbo, of counsel; Mr. Herbert S. Glickman, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
The Unsatisfied Claim and Judgment Fund Board of the State of New Jersey (Fund) appeals from an order of the Law Division directing payment to plaintiff of a judgment she had previously recovered against defendant Chiselko.
The factual background of the case follows: On July 30, 1958 plaintiff suffered personal injuries when her standing automobile which she occupied was struck in the rear by an automobile owned and operated by Chiselko.
*140 On August 4, 1958 a complaint against Chiselko charging a violation of the Traffic Act came on for hearing in the Municipal Court of Bound Brook. At that time Chiselko in the court's presence informed plaintiff that he carried automobile liability insurance with American Automobile Insurance Company (American) and showed her certain documents purporting to be to this effect. These consisted of (1) a receipt of the Automobile Association of New Jersey on which there is boldly printed:

"THIS RECEIPT IS NOT A BINDER FOR INSURANCE (See Reverse Side)"
The inscription on the reverse side reads:
"THIS RECEIPT FOR PAYMENT OF MONEY IS NOT TO BE CONSTRUED AS A BINDER FOR INSURANCE. NO INSURANCE IS BOUND OR EFFECTIVE UNTIL A WRITTEN BINDER OR POLICY OF INSURANCE HAS BEEN ISSUED BY AN INSURANCE COMPANY";
and (2) a receipt of Automobile Assigned Risk Plans showing that in accordance with the rules of the Automobile Assigned Risk Plan the application of Chiselko for insurance had been assigned to the American Automobile Ins. Co. This document clearly states that it is a:
"RECEIPT FOR DEPOSIT PREMIUM  NOT EVIDENCE OF INSURANCE."
It is undisputed that American extended insurance to Chiselko as an assigned risk but that such insurance did not become effective until August 1, 1958, two days after the happening of the accident.
In response to a letter from plaintiff's attorney, dated March 30, 1959, American, on April 16, 1959, advised that the policy it had issued to Chiselko became effective on August 1, 1958, and hence did not cover the accident involved. It was disclosed at the trial that prior to this *141 exchange of letters plaintiff's counsel had been informed by telephone (on or about March 24, 1959) that the insurer had "disclaimed" liability and that such notification had prompted him to request of American the March 30 letter. This was the first specific notice plaintiff had that Chiselko was uninsured at the time of the happening. Within 15 days thereafter, April 1, 1959, her attorney filed with the Fund a "Notice of Intention to Make Claim."
Thereafter, the present action was instituted against Chiselko and reduced to judgment, after which execution was returned unsatisfied. Plaintiff then sought and obtained the order under review. In granting it the trial court is reported to have stated:
"There is no question here in my mind that plaintiff was physically incapable of giving notice. But I do not feel that that is the controlling factor in this case. Rather let us look at Section (b) of that statute [N.J.S.A. 39:6-65], that says:
"`That he gave notice to the board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages.'"
Subsequently, the judge informed counsel by letter that he had been misquoted with respect to plaintiff's physical incapability to give notice within the time prescribed by the statute (90 days), and stated that she was "obviously capable" of doing so. The statement in its corrected form is in accord with the proofs submitted and will be regarded as settling this fact.
Therefore, the single question for determination is whether or not plaintiff's notice of intention to make claim was timely filed with the Fund under N.J.S.A. 39:6-65(b). This section of the statute provides, as an alternative to filing a claim with the Fund within 90 days of the happening of an accident under subsection (a), that a claim is timely if filed within 15 days of receipt by a claimant of notice "that an insurer had disclaimed on a policy of insurance *142 so as to remove or withdraw liability insurance coverage" for the claim in question. (Emphasis added) Specifically, the problem presented is whether American's letter of April 16, 1959 constituted a "disclaimer" within the purview of the above italicized words.
N.J.S.A. 39:6-62 et seq. is designed to create and maintain a fund to provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless. Douglas v. Harris, 35 N.J. 270, 279 (1961). Taken as a whole, the act is to be liberally construed to advance the remedy it affords, due regard being given to the protection of the Fund against fraud and abuse, and to the fulfillment of the essential legislative policy it projects. Giles v. Gassert, 23 N.J. 22, 34 (1956).
The liberality of construction accorded to the statute accents the scope and purposes of the enactment as social legislation, but affords no substitute for proof or evidence necessary for compliance with its terms or conditions. See Szczesny v. Vasquez, 71 N.J. Super. 347, 358-359 (App. Div. 1962). The admonition that due regard must be given to the protection of the Fund, gives recognition to the fact that it is derived from levies legislatively imposed on registrants of motor vehicles, insured and uninsured, and insurers authorized to write automobile liability insurance in this State.
It is inevitable that these two basic considerations may become competing factors in given sets of circumstances. Yet, it is important that the court strive to keep them in balance by literal interpretation of the act, leaving to the Legislature its exclusive function to amend or supplement the law, if in the light of experience such action is deemed necessary to accomplish the fundamental legislative purposes.
While, as we have already indicated, the provision for a 90-day notice required by N.J.S.A. 39:6-65(a) is only incidentally involved in this case, judicial interpretation of *143 that subsection throws light on the approach to be taken in the construction of subsection (b). In Schlenger v. Conti, 47 N.J. Super. 566, 570 (App. Div. 1957), this court, in accepting as entirely valid and well founded the principle of liberal construction enunciated in Giles, supra, pointed out that the legislative mandate contained in N.J.S.A. 39:6-65 that the notice "shall" be given within 30 (now 90) days "as a condition precedent" to the right thereafter to apply for payment from the Fund, could not be more clearly expressed. And in Russo v. Forrest, 52 N.J. Super. 233 (App. Div. 1958), we observed that it would be impossible in a single opinion to lay down general rules for the guidance of all cases in which compliance with the legislative edict was in issue, but again emphasized the mandatory nature of the notice provision contained in subsection (a). See also, Szczesny v. Vasquez, supra, 71 N.J. Super., at pp. 352-353.
Our research indicates that as of December 1961 only New Jersey, North Dakota and Maryland have established Unsatisfied Judgment Funds, although New York has as its equivalent a Motor Vehicle Indemnification Corporation.
The North Dakota statute (N.D.C.C. 39-17-04) requires notice 30 days prior to the entry of judgment, and such notice may not be waived. Bonniwell v. Flanders, 62 N.W.2d 25 (N.D. Sup. Ct. 1953).
The Maryland statute (Ann. Code, 1957, Art. 66 1/2, § 154(a), as amended L. 1960, c. 49, § 1; L. 1961, c. 682, § 1) contains the exception to giving notice as follows:
"* * * (1) that he was physically incapable * * * or (2) that he gave notice to the Board within 30 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages. * * *"
This provision is identical with the one in New Jersey except for the 30 days' (rather than 15 days') limitation. *144 This section of the statute has not, however, been interpreted to date.
The New York statute (N.Y. Insurance Law, § 600 et seq.) provides three categories of situations under which a "qualified person" (as defined in subdivision (b) of section 601) may file a notice of intention to make a claim against respondent: section 608, subdivision (a) covers situations involving "a designated uninsured motor vehicle"; subdivision (b) covers situations involving "a person or persons whose identity is unascertainable"; and subdivision (c) covers situations where "the insurer or insurers * * * have disclaimed liability or denied coverage * * *." Under subdivisions (a) and (b) of section 608, the notice of intention to make a claim must be filed within 90 days of the accrual of the cause of action; under subdivision (c), within ten days after receipt of the notice of disclaimer or denial of coverage. Leave to file after the expiration of the applicable period may be obtained in cases of infancy or of mental or physical incapacity, either from respondent or the court, but application to the latter must be made within 120 days from the beginning of the applicable period for filing. Application of Broderick, 31 Misc.2d 350, 221 N.Y.S.2d 122, 123 (Sup. Ct. 1961).
In the Broderick case plaintiff was involved in an accident on February 22, 1961. On February 27 his attorney sent a claim letter to the driver (and owner) of the car which struck him. On March 7, 1961 the driver replied informing plaintiff that his insurance policy was not in force at the time of the accident because of his failure to pay premiums, and a copy of the policy was enclosed which purported to cover the vehicle from December 8, 1960. On May 29, 1961 the insurer, in reply to plaintiff's attorney's letter of May 26, advised that the policy had been cancelled as of January 31, 1961. Within ten days the indemnification corporation was sent a notice of intention to file claim, but the notice was rejected as untimely. The court in ruling *145 on plaintiff's contention that his notice came within the statute said:
"This information [the insurer's letter to plaintiff of May 29] did not constitute a `disclaimer or denial of coverage' within the meaning of subdivision (c) of section 608 since the quoted words presuppose at least a contrary assertion that a policy is in effect under which coverage is claimed. No such assertion was here made." 221 N.Y.S.2d, at p. 124.
The court also noted that the result argued for by plaintiff would permit an injured person, after the other party admitted that he held no insurance, to contact a former insurer and thus extend the filing period.
In Ackey v. Bruneau, 14 App. Div.2d 628, 218 N.Y.S.2d 863 (App. Div. 1961), the infant plaintiff was struck by defendant's automobile on August 23, 1959. A report of the accident by the sheriff's department after investigation, stated that defendant was insured by GMAC of Montreal. When defendant was in default for failure to file an answer, plaintiff's attorneys wrote to defendant asking about his insurance. Defendant did not reply. Plaintiff thereupon applied for an order to permit late filing.
The court held that there was no basis for holding that these facts showed "that the defendant had liability insurance and because of some act of the person alleged to be liable, the liability carrier has disclaimed liability or denied coverage." 218 N.Y.S.2d, at p. 866. Compare, Application of Motor Vehicle Accident Indem. Corp., 28 Misc.2d 899, 214 N.Y.S.2d 470 (Sup. Ct. 1961), in which the plaintiff was permitted to file his notice of intention where he was misinformed by the Motor Vehicle Bureau that the defendant was validly insured.
In Uline v. Motor Vehicle Accident Indem. Corp., 28 Misc.2d 1002, 213 N.Y.S.2d 871 (Sup. Ct. 1961), it was held that filing within ten days of notification that the insurer had become "defunct and unable to fully satisfy claims covered by its policies," was not filing within ten *146 days of a disclaimer of liability or a denial of coverage by the insurer. The court there pointed out, at pages 874-5:
"To deny coverage is to take the position that for some reason or other the policy does not encompass the particular accident. No such claim is made here. A disclaimer of liability usually arises where there is coverage, but because of some action on the part of the insured, the company refuses to respond. This refusal could be for lack of cooperation by the insured, fraud perpetrated by the insured on the company or serving late notice of the accident, just to mention a few. There is no disclaimer in the present case."
Lastly, in Ortiz v. Pabon, 22 Misc.2d 241, 198 N.Y.S.2d 652 (Sup. Ct. 1960), the accident occurred on April 26, 1959, and on May 13, 1959 plaintiff was notified by the insurer that defendant was not covered. However, on May 25, 1959 the Motor Vehicle Bureau notified plaintiff that defendant was insured on the date of the accident. On October 8, 1959 the Bureau informed plaintiff that as a result of its investigation it had been determined that, in fact, defendant was uninsured.
The court held that there is no requirement that the Bureau give plaintiff such information, and that plaintiff was bound to rely on the insurer's statement of May 13 and, therefore, did not come within the exception of section 608(c).
Having in mind our duty to ascribe to the language of the statute its plain and unambiguous meaning and to give full effect to its every word, even though by so doing we deprive a claimant of its benefits, we find to be inescapable the conclusion that American's letter of April 16, 1959 was not a disclaimer contemplated by N.J.S.A. 39:6-65(b). Plainly, the statutory wording, "that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance," (emphasis added) imports that if the "disclaimer" were not made, a valid policy of insurance would subsist. One cannot withdraw or remove a thing which never existed. Cf. Wormack v. Howard, 33 N.J. 139 (1960). Thus the undisputed fact that *147 American's policy did not become effective until two days after the accident inalterably deprives the letter of April 16 of any force whatever as a disclaimer within the purview of the statute.
The plaintiff therefore having failed to "clearly demonstrate" that the requirements of either subsections (a) or (b) of N.J.S.A. 39:6-65 were met, is not entitled to the benefits of the Fund. See Wormack, supra, 33 N.J., at p. 143.
In arriving at this conclusion we are conscious of the fact that she is one of a class of persons for which the act was designed to provide redress. And we are not unmindful that she refrained from filing a notice within the 90-day period because she relied on Chiselko's implied representation that he held collectible insurance, and understandably misinterpreted the written information Chiselko laid before her.
However, there is nothing in the act, express or implied, which charges the Fund with the misrepresentation of one claiming to be insured, nor is any suggestion contained therein that noncompliance with the notice provisions may be excused for this or any other reason. It would be entirely within the legislative authority to provide such an escape hatch if it chose to do so, and we must assume that the Legislature considered this possibility and rejected it in favor of the ringing mandate that compliance with the time provisions is a condition precedent to the right to an order for payment by the Fund.
It is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body to properly effectuate the legislative design. Dixon v. Gassert, 26 N.J. 1, 9 (1958). In the present case the design is so clearly expressed as to admit of no doubt that with respect to notification of an intention to file a claim, time is of the essence.
The order under review is set aside. No costs.