338

927 A.2d 418

Irish McNEILL, et al.

v.

MARYLAND AUTOMOBILE INSURANCE FUND.

No. 1056, Sept. Term, 2006.

Court of Special Appeals of Maryland.

July 5, 2007.

Samuel Sperling, Baltimore, for appellant.

C. Russell Fields (Robert L. Simmons, on brief), Timonium, for appellee.

Panel SALMON, DEBORAH S. EYLER and WILLIAM W. WENNER, (Ret., Specially Assigned), JJ.

SALMON, J.

The issue of statutory construction to be addressed in this case is both novel and exceedingly narrow.

Section 20–603 of the Insurance Article of the Maryland Code (2006 Repl.Vol.) provides, in material part, as follows:

**Notice of claim.**

(a) *Time for filing; exceptions.*—(1) Except as provided in paragraph (2) of this subsection, notice of a claim for damages must be filed with the [Maryland Automobile Insurance] Fund within 180 days after the accident out of which the cause of action arises before a person may apply or sue for payment from the [Maryland Automobile Insurance] Fund under this subtitle.

(2) If notice of a claim is not filed within the time required under paragraph (1) of this subsection, a claim or suit may not be filed or maintained unless the claimant provides proof:

\*　　\*　　\*

(ii) *that the claimant filed notice within 30 days after having received notice that an insurer had disclaimed on a policy and thus removed or withdrew liability insurance coverage for the claim against a defendant . . . .*

(Emphasis added.)

The appellant, Irish McNeill, admits that she did not give notice to the Maryland Automobile Insurance Fund ("MAIF") within 180 days of July 17, 2002, which was the date of the accident that gave rise to her claim. She maintains, however, invoking the provisions of Section 20–603(a)(2)(ii), that she notified MAIF of a claim for damages within thirty days after her attorney first received notice that Allstate Insurance Company had disclaimed coverage on a policy and thus removed or withdrew liability insurance coverage for her claim against an uninsured motorist.

MAIF, for purposes of this appeal, admits that Mrs. McNeill notified it within thirty days after she learned that Allstate had *denied* coverage to the uninsured motorist. But, relying exclusively on the decision in *Unsatisfied Claim & Judgment Fund v. Holland,* 241 Md. 294, 216 A.2d 525 (1966), MAIF asserts that Allstate never *"disclaimed"* coverage as that term is used in Section 20–603(a)(2)(ii).[1] Instead, argues MAIF, Allstate merely notified Mrs. McNeill that it provided "no coverage" of the uninsured motorist for the subject accident. MAIF asserts that within the meaning of Section 20–603, an insurer does not "disclaim" coverage if it simply advises a claimant that there never was coverage in the first place.

## I.

On July 17, 2002, Irish McNeill was a passenger on a bus when a vehicle driven by Damon Dodd ("Dodd") struck the bus. As a result of the accident, Mrs. McNeill and her husband filed a complaint in the Circuit Court for Baltimore City. The complaint alleged that Mrs. McNeill suffered bodily injuries as a result of the accident, which was solely caused by the negligence of Dodd and that the McNeills, jointly, suffered injuries due to loss of consortium due to Mrs. McNeill's injuries. The complaint further alleged that the vehicle operated by Dodd was owned by Katherine Curran and Michael Curran and that Dodd was operating the vehicle at the time of the accident as "their agent, servant, and employee . . . and within the course of [his] employment. . . ." Katherine Curran, Michael Curran, and Dodd were the only named defendants in the complaint.

---

1. When the *Holland* case was decided, the proper entity to be sued by one trying to collect a judgment rendered against an uninsured motorist was the Unsatisfied Claim and Judgment Fund Board ("UCJF"). In 1972, MAIF was created and organized by Laws 1972, Ch. 73, and the provisions of Article 66½ dealing with the UCJF were repealed and reenacted as part of sections 243–243L of the Insurance Code. *See Shelton v. MAIF,* 45 Md.App. 130, 132 n. 2, 409 A.2d 756 (1980).

The vehicle driven by Dodd was insured by Allstate Insurance Company ("Allstate") at the time the vehicle collided with the bus. Allstate retained Jessica F. Ferrill, Esq., to represent its insureds, Michael and Katherine Curran, in the lawsuit filed by the McNeills. After the Currans were served, Ms. Ferrill promptly filed an answer on behalf of both of her clients.

Almost exactly one year after the accident, on July 14, 2003, Allstate sent a letter to Dodd that read:

Allstate Insurance Company

Claim Number: 7082922803 MCM

Date of Loss: July 17, 2002

Our Insured: MICH[AE]L N CURRAN

Dear Mr. Dodd:

With respect to the accident in which you were involved or for which you may be legally liable, occurring on July 17, 2002 at FRANKLIN ST, BALTIMORE, the Allstate Insurance Company hereby disclaims and denies any and all liability or obligation to you or others under its policy numbered 098193039 and issued to MICH[AE]L N CURRAN.

This disclaimer is made because of your failure to qualify under Part 1 of the policy entitled "Insured Person," which states:

"While using your insured auto: a) you, b) any resident, and c) any other person using it with your permission." Because you were using the *named insured's vehicle without her permission,* there is no coverage for this loss.

The Allstate Insurance Company will take no further action with respect to any claim which you may have against it or with respect to any claim or suit against you which has arisen or which may arise out of said accident and hereby withdraws from the matter entirely.

In early January 2004, counsel for the McNeills was told by Ms. Ferrill that Dodd, at the time of the accident, "was a nonpermissive user" of the automobile and thus was not covered by Allstate's policy for the claims made by the McNeills. Counsel for the McNeills, on January 27, 2004,

notified MAIF by fax that the McNeills intended to make a claim against it for injuries received in the July 17, 2002, accident. Counsel further advised MAIF in the fax that his clients had "just become aware of the fact" that Dodd was uninsured.[2]

Not long after MAIF received notification of the McNeills' claim, Katherine and Michael Curran filed a motion for summary judgment in the circuit court action filed by the McNeills. The motion was supported by Katherine Curran's affidavit in which she swore that she was the owner of the vehicle involved in the accident in which Mrs. McNeill was injured; that she had "never met Damon Dodd"; that "Damon Dodd was never an agent, servant, and/or employee ... [of hers] at any time"; that she "never gave Dodd a set of keys to said vehicle at any time"; and that "Dodd did not ask, request, or obtain [her] permission to operate the vehicle at the time of the accident at issue."

On June 7, 2004, counsel for Irish McNeill and her husband consented to the grant of the summary judgment motion and three days later the Circuit Court for Baltimore City docketed an order granting summary judgment in favor of Katherine and Michael Curran.

Counsel for the McNeills on July 8, 2004, wrote a letter to the executive director of MAIF notifying him that Irish McNeill "will be having her trial [in which Dodd was the sole remaining defendant] in the Circuit Court for Baltimore City on July 20, 2004...." The letter further advised that the uninsured driver, Dodd, "had been in prison but was released ... on or about April 15, 2004."

The tort case against Dodd was called for trial on July 20, 2004. Dodd was not in attendance, nor did a representative of

2. In the trial court, MAIF denied receiving the January 27, 2004, fax. But the McNeills put on evidence showing that the fax was sent on January 27 and received by MAIF in a timely fashion. The trial judge credited that evidence. The trial judge also rejected a contention made by MAIF that counsel for the McNeills first learned of Allstate's denial of coverage in July 2003. In this appeal MAIF does not take issue with any of the trial court's factual findings.

MAIF appear. The court proceeded to hear evidence as to damages and later that day entered a judgment in favor of Mrs. McNeill and against Dodd in the amount of $10,480.90.[3]

After the judgment was entered in her favor, Mrs. McNeill, by counsel, filed a petition in the Circuit Court for Baltimore City, naming MAIF as a defendant. She demanded that MAIF pay the $10,480.90 judgment and alleged in her petition that, in accordance with Section 20–603(a)(2)(ii) of the Insurance Article, she notified MAIF of her claim within thirty days after having received notice that Allstate had disclaimed coverage. MAIF filed an answer to the petition in which it alleged that Mrs. McNeill's petition was barred by Section 20–603 inasmuch as she failed to notify it of her claim within 180 days of the accident, and because the exceptions to the 180–day notice requirement set forth in Section 2–603(a) of the Insurance Article were all inapplicable.

After conducting an evidentiary hearing, the court ruled that Mrs. McNeill's notice to MAIF was untimely because Allstate "never disclaimed on a policy" and thus the exception set forth in Section 20–603(a)(2)(ii) was inapplicable.

The question to be resolved in this appeal is whether Allstate "disclaimed on a policy" as that term is used in Section 20–603(a)(ii) when it wrote to Dodd and informed him that it was denying him coverage for the July 17, 2002, accident.

### III.

In *Unsatisfied Fund v. Holland,* 241 Md. at 295, 216 A.2d 525, the Court of Appeals was called upon to interpret a statute that, in all respects here relevant, was worded identically to Section 20–603.[4]  *See* Md.Code Art. 66½, § 154(a) (Cum.Supp.1965) (repealed 1972).

---

3. No judgment for loss of consortium was entered.

4. MAIF is the entity to which notice must now be sent, whereas when *Holland* was decided the statute provided that notice was to be sent to

The accident that was the focus of the *Holland* opinion occurred on September 4, 1960. *Holland*, 241 Md. at 295, 216 A.2d 525. Boice, the motorist who was alleged to have been negligent in that accident, was insured by the Olympic Insurance Company ("Olympic") up until June 4, 1960, at which time Olympic canceled Boice's policy. *Id.* Three months later, on September 4, Boice was involved in an accident with one Mary Holland. Holland did not notify the Unsatisfied Claim and Judgment Fund ("UCJF") of her intention to make a claim within ninety days of the accident. She did, however, give notice to the UCJF within thirty days of her counsel's receipt of a letter from Olympic telling him that Boice's policy was not in effect as of the date of the accident. *Id.* at 297, 216 A.2d 525. The issue decided in *Holland* was whether the letter of November 25, 1960, from Boice's one-time insurer to the attorney for Holland should be construed to mean that Olympic had "disclaimed liability under a policy" as that term was used in the statute. If so, then Holland's counsel gave "notice" to the UCJF within thirty days, as the statute required. *Id.* at 296, 216 A.2d 525. The trial judge found in favor of Holland and ruled that Olympic had "disclaimed on a policy of insurance" within the meaning of the statute when it sent the November 25, 1960, letter. The Court of Appeals reversed because "to disclaim coverage" presumes that a policy is in effect under which coverage is claimed, and Olympic's policy was not in effect at any time pertinent. *Id.* at 298–303, 216 A.2d 525.

The statute at issue in *Holland* and in this case was modeled after a law enacted by the New Jersey legislature in 1952. *See Wheeler v. Unsatisfied Claim & Judgment Fund*, 259 Md. 232, 234, 269 A.2d 593 (1970). Except for differences in the identity of the party to be notified and the time allowed for notification, New Jersey's statute and Maryland's were worded identically. *See Holland, supra*, 241 Md. at 298–99,

---

the UCJF and, instead of 180 days, a claimant was required to notify the UCJF within ninety days of the accident unless one of the three exceptions now set forth in Article 26, Section 603(a), was applicable.

216 A.2d 525; *see also* N.J. Stat. Ann. § 39:6–66 to–91 (West 1961). Also, when *Holland* was decided, New York had a statute worded similarly to the Maryland and New Jersey statutes. *Id.* at 299, 216 A.2d 525.

The *Holland* Court's resolution of the statutory construction problem presented was based almost exclusively on the reasoning in *Parrot v. Chiselko,* 74 N.J.Super. 138, 180 A.2d 710 (1962), which was written by Judge Foley of the Appellate Division of the New Jersey Superior Court.

The *Parrot* case was factually on "all fours" with *Holland.* The claimant in *Parrot* did not notify the New Jersey Unsatisfied Claim and Judgment Fund of his intent to make a claim against it within ninety days of the accident. He did, however, advise the Fund of such an intent within thirty days of being notified by an insurance company that the defendant's insurance policy had not become effective until two days after the subject accident and that, as a consequence, there was no coverage. *Holland,* 241 Md. at 299, 216 A.2d 525. The Court in *Holland* then analyzed and quoted liberally from the *Parrot* case as follows:

> Judge Foley then called attention to N.Y. Insurance Law § 608(c) covering situations where "the insurer or insurers * * * have disclaimed liability or denied coverage * * *" and *Application of Broderick,* 31 Misc.2d 350, 221 N.Y.S.2d 122, 123 (1961)[,] wherein this language was construed. Judge Foley continued:
>
> > "In the Broderick case plaintiff was involved in an accident on February 22, 1961. On February 27 his attorney sent a claim letter to the driver (and owner) of the car which struck him. On March 7, 1961[,] the driver replied informing plaintiff that his insurance policy was not in force at the time of the accident because of his failure to pay premiums, and a copy of the policy was enclosed which purported to cover the vehicle from December 8, 1960. On May 29, 1961[,] the insurer, in reply to plaintiff's attorney's letter of May 26, advised that the policy had been cancelled as of January 31, 1961. Within

ten days the indemnification corporation was sent a notice of intention to file claim, but the notice was rejected as untimely. The court in ruling on plaintiff's contention that his notice came within the statute said:

"This information (the insurer's letter to plaintiff of May 29) did not constitute a 'disclaimer or denial of coverage' within the meaning of subdivision (c) of section 608 *since the quoted words presuppose at least a contrary assertion that a policy is in effect under which coverage is claimed. No such assertion was here made.*" 221 N.Y.S.2d, at p. 124.

"The court also noted that the result argued for by plaintiff would permit an injured person, after the other party admitted that he held no insurance, to contact a former insurer and thus extend the filing period."

Also quoted with approval [in *Parrot*] at 714, was a statement of the New York Supreme Court in an earlier case:

"*To deny coverage is to take the position that for some reason or other the policy does not encompass the particular accident. No such claim is made here. A disclaimer of liability usually arises where there is coverage, but because of some action on the part of the insured, the company refused to respond.* This refusal could be for lack of cooperation by the insured, fraud perpetrated by the insured on the company or serving late notice of the accident, just to mention a few. There is no disclaimer in the present case." *Uline v. Motor Vehicle Accident Indem. Corp.*, 28 Misc.2d 1002, 213 N.Y.S.2d 871 (1961).

We might very well adopt as our own those portions of Judge Foley's concluding remarks which are set forth below:

"Having in mind our duty to ascribe to the language of the statute its plain and unambiguous meaning and to give full effect to its every word, even though by so doing we deprive a claimant of its benefits, we find to be inescapable the conclusion that American's letter of April

16, 1959[,] was not a disclaimer contemplated by N.J.S.A. 39:6–65(b). Plainly, the statutory wording, '*that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance,*' . . . *imports that if the 'disclaimer' were not made, a valid policy of insurance would subsist. One cannot withdraw or remove a thing which never existed.* Cf. *Wormack v. Howard,* 33 N.J. 139, 162 A.2d 846 (1960). Thus the undisputed fact that American's policy did not become effective until two days after the accident inalterably deprives the letter of April 16 of any force whatever as a disclaimer within the purview of the statute."

\* \* \*

"In arriving at this conclusion we are conscious of the fact that she [the plaintiff] is one of a class of persons for which the act was designed to provide redress. And we are not unmindful that she refrained from filing a notice within the 90–day period because she relied on Chiselko's implied representation that he held collectible insurance, and understandably misinterpreted the written information Chiselko laid before her.

"However, there is nothing in the act, express or implied, which charged the [UCJF] with the misrepresentation of one claiming to be insured, nor is any suggestion contained therein that noncompliance with the notice provisions may be excused for this or any other reason. It would be entirely within the legislative authority to provide such an escape hatch if it chose to do so, and we must assume that the Legislature considered this possibility and rejected it in favor of the ringing mandate that compliance with the time provisions is a *condition precedent* to the right to an order for payment by the [UCJF]." 180 A.2d at 714–15.

*Id.* at 300–02, 216 A.2d 525 (some emphasis added).

The situations presented in *Holland* and in those New York and New Jersey cases upon which the *Holland* Court relied are distinguishable from the case *sub judice.* In *Holland,* and

in all the cases cited in that case, the insurer, who was alleged to have "disclaimed coverage," had no policy that was in effect when the accident occurred. *Id.* at 301, 216 A.2d 525. Here, Allstate's policy was in effect when Mrs. McNeill was injured, as demonstrated by the fact that Allstate provided a defense to the Currans in regard to the tort suit filed against them by the McNeills. Thus, if Mrs. McNeill's notice is held to come within the exception set forth in Section 2–603(a)(2)(ii), at least one of the dangers discussed in *Holland* presents no problem because here there is no danger that a claimant will attempt to surmount the time limits set forth in Section 20–603 by waiting more than six months after the accident and then contact a former insurer of the negligent driver and request that it "disclaim coverage" under a policy that was not in effect when the claimant was injured.

In our view, the most important words contained in the *Holland* decision were those it quoted with approval from *Parrot,* viz.: " 'that an insurer has disclaimed on a policy of insurance so as to remove or withdraw liability insurance' imports that if the disclaimer were not made, a valid policy of insurance would subsist." *Holland,* 241 Md. at 301, 216 A.2d 525. In the subject case, unlike the situation discussed in *Holland,* there would have been a valid policy of insurance subsisting if Allstate had not disclaimed coverage.

We hold that to "disclaim coverage," within the meaning of Section 26–603(a)(ii), the insurer must take the position that, although a valid policy is in effect at the time of the accident, the company is nevertheless withdrawing or withholding liability insurance coverage for the accident because, for some reason, the policy does not encompass the accident. That reason can be due to post-accident action or inaction on the part of the insured (e.g., non-cooperation with the insurer) or it can be due to a policy provision that excludes a driver from coverage due to his or her pre-accident behavior, such as driving an insured automobile involved in an accident while carrying persons or property for a fee (if such uses are excluded from liability coverage), or, as in this case, driving

the insured's vehicle without the consent of the named insured.

In construing Article 20–603(a), we are mindful of the fact that the primary purpose of subtitle 6 of Article 20 was to allow qualified persons to file claims against MAIF in order "to mitigate and ameliorate hardships caused by financially irresponsible and uninsured motorists where the claimants have no other source of compensation." *Unsatisfied Claim & Judgment Fund v. Hamilton,* 256 Md. 56, 60, 259 A.2d 303 (1969). We are also mindful of our duty to construe that subtitle liberally in order to advance the aforementioned legislative intent. *D'Ambrogi v. Unsatisfied Claim & Judgment Fund,* 269 Md. 198, 200, 305 A.2d 136 (1973).

In the case at hand, it would appear that even Dodd may not have known that he was not covered for the subject accident until Allstate advised him about one year post-accident of its position. But, in any event, the claimant in this case did not know and, as far as we can determine, had no way of knowing within 180 days of the accident that Dodd was uninsured. Thus, it would have been impossible for her to meet the 180–day deadline. If the trial court's denial of Ms. McNeill's claim is upheld, Mrs. McNeill, an innocent accident victim, will have no source of compensation for the injuries she received in the July 17, 2002, accident, and the benevolent purpose of the statute would be thwarted.

For the foregoing reasons, we hold that the circuit court erred in dismissing Mrs. McNeill's claim against MAIF.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THE VIEWS EXPRESSED IN THIS OPINION; COSTS TO BE PAID BY APPELLEE.**