FLOYD R. GILES, PLAINTIFF-RESPONDENT, v. FREDERICK J. GASSERT, JR., DIRECTOR OF THE DIVISION OF MOTOR VEHICLES IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY AND THE UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS-APPELLANTS.

A–43

VIOLA MURRAY, ADMINISTRATRIX *AD PROSEQUENDUM* OF THE ESTATE OF JOHN FRANCIS MURRAY, DECEASED, PLAINTIFF-RESPONDENT, v. FREDERICK J. GASSERT, JR., DIRECTOR OF THE DIVISION OF MOTOR VEHICLES IN THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 29 and November 5, 1956—Decided December 3, 1956.

*Mr. Robert G. Howell* argued the cause for the appellants in A–42.

*Mr. Edward S. Miller* argued the cause for the respondent (*Messrs. Gant & Miller,* attorneys).

*Mr. John J. Gaffey* argued the cause for the appellant in A–43 (*Messrs. Minard, Cooper, Gaffey & Webb,* attorneys).

*Mr. James T. Owens* argued the cause for the respondent.

The opinion of the court was delivered by

HEHER, J.   The issues raised in these proceedings concern the meaning of section 18 of the "Unsatisfied Claim and Judgment Fund Law," approved May 10, 1952, effective

April 1, 1955, *L.* 1952, *c.* 174, *N. J. S. A.* 39 :6–61, 78, as amended by *L.* 1955, *c.* 1, approved March 30, 1955, related to section 5 of the act, as amended by *L.* 1955, *c.* 1, *N. J. S. A.* 39 :6–65, regulating the procedure in the so-called "hit-and-run" cases within the coverage of the law.

The act provides for the establishment of "an unsatisfied claim and judgment fund for the payment of damages for injury to or death of certain persons and for damages to property arising out of the ownership, maintenance or use of motor vehicles in this State in certain cases"; and it is ordained by section 18 that "When the death of, or personal injury to, any person" arises out of the ownership, maintenance or use of a motor vehicle in this State on or after April 1, 1955, "but the identity of the motor vehicle and of the operator and owner thereof cannot be ascertained or it is established that the motor vehicle was at the time" the accident occurred "in the possession of some person other than the owner without the owner's consent and that the identity of such person cannot be ascertained, any qualified person who would have a cause of action against the operator or owner or both in respect to such death or personal injury for a sum in excess of $200 exclusive of interest and costs, may, upon notice" to the Director of the Division of Motor Vehicles and the Unsatisfied Claim and Judgment Fund Board created by the act, apply to the Superior Court for an order "permitting him to bring an action therefor against the director in such court, and the court may proceed upon such application, in a summary manner, and may make an order permitting the applicant to bring such an action against the director when the court is satisfied * * *," *inter alia,* that—

(1) "The applicant has complied with the requirements of section 5" of the act, and is otherwise qualified as therein provided, in matters not now pertinent;

(2) "The applicant has a cause of action against the operator or owner of such motor vehicle or against the operator who was operating the motor vehicle without the consent of the owner * * *"; and

(3) "All reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either that the identity of the motor vehicle and the owner and operator thereof cannot be established, or that the identity of the operator, who was operating the motor vehicle without the owner's consent, cannot be established."

Section 5, as thus amended, *N. J. S. A.* 39:6–65, provides that "Any qualified person, or the personal representative of such person, who suffers damages resulting from bodily injury or death or damage to property arising out of" the ownership, maintenance or use of a motor vehicle in the particular circumstances, "and whose damages may be satisfied in whole or in part from the fund, shall, within 30 days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, on a form prescribed by it, of his intention to make a claim thereon for such damages if otherwise uncollectible and otherwise comply with the provisions of this section; provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment that he was physically incapable of giving said notice within said period and that he gave said notice within 30 days after he became physically capable to do so or in the event that he did not become so capable, that a notice was given on his behalf within a reasonable period"; and "In said notice he shall specify the time and place of the accident, identify the operators and vehicles involved therein and such witnesses to said accident, as are then known to him and describe the injuries then known to him and the damage to property sustained."

It is directed that the notice be accompanied by (a) a certification by a physician of the injuries sustained "so far as they can then be anticipated and of the treatment afforded by him"; (b) an itemization of the cost of repairs, if the damage is to an automobile; (c) the known liability insurance coverage of the motor vehicles involved in the

accident; and (d) a copy of the complaint if an action has been brought to enforce the claim. And there is further provision for notice to the board, within 15 days, of any action "thereafter instituted for the enforcement" of the claim, accompanied by a copy of the complaint.

## I.

In A–42, the plaintiff Giles suffered personal injuries on May 29, 1955, when the automobile of his landlady, which he was operating while pleasure bent, "went out of control" on Main Road in Vineland, New Jersey, near the intersection of Russell Avenue, and collided with a pole, as a result, he testified, of the erratic movement in the opposite direction of an automobile which continued on, leaving Giles unaware of the identity of the operator of the vehicle and the *indicia* that would lead to its identification, information that was not forthcoming by later inquiry. Alone at the time, he explained that he "remember(ed) the accident" only "in a slight way up until the thing happened," and after that he "was more or less, well, unconscious and only at times knew things"; he found it "hard" to say "exactly how it happened"; he "saw this car coming at me and the thing went past and he cleared me and I spun around and hit a pole." But later on he said there was "an actual collision," an "impact, slightly between" the vehicles, and he "spun around"; "That's when I hit the pole; in fact, I hit two; I don't know if it was one or four; that I don't know; I know I hit one of them." His car skidded 66 feet, hit a telephone pole on the west side of the highway, and then skidded 52 feet across the road and struck a telephone pole and a mail box on the east side. Although it was still light, he could not identify the other car as to make, color or by other description or circumstance, whether occupied by one or more or driven by man or woman. He said the unidentified car veered into his "lane of traffic," but this was purely deductive and not a thing observed, he agreed, and at a later hearing he reiterated

that the other car was two feet over the center line of the road, while his own was four feet from center, a condition that does not explain the claimed collision.

Yet there was evidence of damage to the left front fender and side of plaintiff's car, a dent in the left front fender two inches deep, affirmed as significant in that it is fairly deducible from the evidence that the damage ensuing from the car's contact with the poles was all to the rear and right front of the vehicle. Also, there was testimony from another motorist and his wife, the witnesses Delancey, that not far away, at what is said to have been a fairly related time and place, he was forced to "swerve off the road" to avoid collision with a 1941 black Plymouth car "coming right head on to me," although it is urged that there is a discrepancy in time fatal to the relevance of this piece of evidence. And it is said that Giles did not make known to the police officer who came to the scene that another automobile had "collided with his," or request the police department, then or later, "to locate this car." But the officer, Rudemann, admitted that Giles did tell him, immediately on his arrival, that "a car came over on his side of the road"; and he, the officer, added that "There was no evidence of another car being in the accident," and he "didn't look for that other car," nor did he investigate to determine whether Giles' "story was true or false." He was at a loss to explain the accident. He continued: "The telephone pole was damaged some. I don't know how the car got there in that position to make the imprint on the car and then cross the road. I don't know. I can't figure it out to this day. I don't know how the impression came on the car. I can't figure that one out."

Notice of an intention to make claim upon the statutorily-created Claim and Judgment Fund for the damages thus sustained was not given to the Board until 76 days after the mishap; and the delay is attributed to Giles' hospitalization and sedation attending the treatment of a "fracture, dislocation of the fifth cervical spine," the lower part of the neck, and a "fracture of the eleventh thoractic," the

lower part of the back, requiring the use of a traction collar and weights until his hospital discharge on the ensuing July 20, and a collar to hold his head erect and rigid for three or four months thereafter. The X-rays taken upon his admission to the hospital did not reveal these injuries; and he was discharged two days later. But he continued under great pain; and on June 14 he was returned to the hospital and there underwent the given course of treatment for the injuries disclosed by later X-rays, the while enduring pain of such severity as to require the administration of sedatives.

Giles' physician and surgeon testified that until his hospital discharge on July 20 he was incapable of "attending to business affairs," and the notice given to the Board on August 12 was given within 30 days after his capacity thus to act had been restored; he said: "* * * this man had pains and the numbness in his arms, and had these terrific pains in the neck and down both arms, and there was numbness down to his fingers, and the neck was rigid." Again, he insisted that Giles was "not capable of attending to business affairs" on July 12, and until he was discharged on July 20; and that he was "in pain far after that, too," and "if it was me with the pains he had I wouldn't put too much stock in my own talking at that time." This, in response to evidence that, during his two weeks at home after his initial hospital discharge, Giles was able to move about, seemingly of normal function, and in particular had assisted his landlady in the preparation of reports to the Motor Vehicle Department and her insurance carrier, and had made claim for reimbursement of medical expenses under her liability insurance policy. Yet it goes without saying that ability in this behalf during that limited period would not be conclusive of the issue of continuing capacity to realize and satisfy the need of giving the notice made a precondition of recourse to the fund. Although the physician did say that Giles, once he was "out of traction," on July 8, was "physically" capable of making the report, it would seem to be a matter of fair inference

that, while under hospital confinement, he was not mentally and emotionally adjusted to his responsibility in this regard, in consequence of his physical injuries and the required treatment, and thus there was an issue of fact for the Superior Court. Here, too, the proofs are not conclusive of the precise time when physical capability was restored. Giles consulted counsel on July 23; the notice was signed August 11, and received by the Board on August 13.

Giles was given leave, by order entered April 6, 1956 in this proceeding in the Law Division of the Superior Court, to bring an action against the defendant Director of Motor Vehicles to enforce his asserted cause of action pursuant to section 18 of the cited statute, *N. J. S. A.* 39:6–78; and we certified defendant's appeal taken by leave of the Appellate Division under *R. R.* 2:2–3, on the assumption that the order is interlocutory, a question we need not consider now.

## II.

In A–43, the plaintiff's decedent, 39 years of age, was struck and instantly killed May 27, 1955 by an automobile in the "hit-and-run" category, as he alighted from his own car in front of his home No. 256 Sixth Avenue in Newark, New Jersey. He was survived by his wife, the plaintiff administratrix, and four minor children, three of whom are dependents ranging in age from 10 to 16 years. His widow remained in a state of shock and mental confusion for some weeks thereafter; and there was physical and emotional tension and deterioration that seriously interfered with normal function. Word came from the local police department that "leads" to the identity of the "hit-and-run" car and that of the operator were under inquiry, and in due course she would be advised of the result. And in the latter part of July or early August following, she was advised by the police that their efforts had been in vain and the inquiry had come to an end. She then retained counsel; and on August 2, 1955 notice of the claim was given to the "Security Responsibility Bureau," receipt of which was

acknowledged by the Claim and Judgment Fund Board on August 3, and on September 16 following notice of an intention to make claim upon the Fund was filed with the Board in the form prescribed by it. It is stipulated that the "notice was filed within a reasonable period" if, counsel states on the brief, "such a notice can be legally filed after the 30-day period stipulated in the statute."

On April 16, 1956 the widow was appointed administratrix *ad prosequendum* of the estate of her deceased husband, "to prosecute the said cause of action * * * against the Unsatisfied Claim & Judgment Fund Board, to wit, against the defendant, Fred J. Gassert, Jr., Director, Division of Motor Vehicles"; and the administratrix was given leave, in the proceeding now before us, to bring action accordingly against the defendant director, also pursuant to section 18 of the statute, *N. J. S. A.* 39:6–78. And we certified defendant's appeal taken by leave of the Appellate Division under the rule of court adverted to.

### III.

The statute is modeled after the Ontario act, *Part* XIV of *The Highway Traffic Act, R. S. O. c.* 167. See *Report and Recommendations of The Joint Committee of the New Jersey Legislature under Assembly Concurrent Resolution No. 7,* January 28, 1952. Section 5 of our act, *N. J. S. A.* 39:6–65, is original with us; the Ontario act does not have a like provision. And there is no similar statute elsewhere in this country, although North Dakota has legislation on the subject. *N. D. Rev. Code* of 1943 (1949 *Supp.*), *c.* 39–17, as amended by N. D. Laws 1951, *c.* 257 and *c.* 259. See *The Unsatisfied Judgment Fund and the Irresponsible Motorist,* by Scott H. Elder in *Current Trends in State Legislation* (University of Michigan, 1953–1954).

The basic contention is that in "hit-and-run" cases, "a valid notice of intention cannot be given after the expiration of 30 days," no matter what the circumstances.

The argument is that in all such cases compliance with section 5 of the act, *N. J. S. A.* 39:6–65, is a condition

prerequisite to the right to sue the Director, yet where the "defendant is known" and judgment is recovered in the action "against any other person who was the operator or owner of a motor vehicle," section 9, *N. J. S. A.* 39:6-69, section 10, *N. J. S. A.* 39:6-70, but not otherwise, if notice was not given within the 30-day period because the claimant was "physically incapable of giving said notice within said period," he may show, in moving for payment of the judgment from the Fund, the giving of such notice within 30 days after he became physically capable or notice by another in his behalf "within a reasonable period" if "he did not become so capable"; and the court may hear proofs "regarding a delayed notice within the proviso" of section 5, *N. J. S. A.* 39:6-65, only on an application for payment of a judgment under section 10, *N. J. S. A.* 39:6-70, but not where leave to sue the director is sought in a "hit-and-run" case; the "delayed notice" within the proviso of section 5, *N. J. S. A.* 39:6-65, we are told, concerns the right to payment of a judgment "against any other person who was the operator or owner of a motor vehicle," section 9, *N. J. S. A.* 39:6-69, and the Director "is not such a person"; in " 'hit-and-run' cases there is no 'hearing of the application for the payment of a judgment' and the proviso in *N. J. S. A.* 39:6-65 cannot become available to the claimant since no such hearing is contained in the sections of the statute governing hit-and-run cases."

█ But the provisions thus invoked plainly have reference to proceedings against a known tortfeasor who becomes a judgment debtor; the unresolved issue of notice is there determinable on the motion for payment out of the Fund of the judgment recovered against the wrongdoer himself. Where, as here, the wrongdoer is unknown the Director was suable by leave of court under the statute as it was when these claims arose, section 18, *N. J. S. A.* 39:6-78, provided the claimant established, *inter alia,* the giving of the notice prescribed by section 5, *N. J. S. A.* 39:6-65; and there is no discernible reason of policy why the deferred notice provision should apply in the one case but not in the other.

The proviso is not so conditioned. Deferment of notice for physical disability where the tortfeasor is known and not where he is unknown would be illusory, a wholly arbitrary distinction not at all in keeping with the spirit and the indubitable reason and policy of the statute. The notice is designed to afford a timely inquiry and thus to safeguard the Fund against fraud and imposition.

Indeed, on the oral argument counsel seemed to concede that the claimed deficiency was purely inadvertent, although it is suggested on the brief that "stale claims, particularly in hit-and-run cases, can be exceedingly difficult to investigate"; the "prospects of locating the unknown car and driver are markedly decreased with the elapse of a short period of time," and the Legislature "may have resolved that 30 days was a sufficient period in all hit-and-run cases because of these and other circumstances," and "Regardless of whether" this limitation of the "right to give notice in hit-and-run cases" was "designed or not, the words of the Act appear to require such a notice as a prerequisite to a right to seek leave to sue."

But this reasoning loses all force when it is considered that the deferment is accorded only to the claimant who is physically incapable of giving the notice. The purpose to be served by the notice is the same in both classes of cases. Section 5, *N. J. S. A.* 39 :6–65, covers both categories: in the "hit-and-run" cases, the notice provided by section 5 was a precondition to the right to sue the director under section 18 as it then was; this was the first proceeding against the director, and opportune for determining the issue of notice; in the case of a known tortfeasor the issue was for obvious procedural reasons reserved for litigation on the motion for payment of the judgment against the known wrongdoer from the Fund.

The tendered interpretation would penalize the disabled claimant where the wrongdoer is unknown, a differentiation having no relation whatever to the basic policy of the statute. The sense of a law is to be collected from its object and the nature of the subject matter, the contextual setting,

and the statutes *in pari materia;* and the import of a particular word or phrase is controlled accordingly. Isolated terms cannot be invoked to defeat a "reasonable construction." *Wright v. Vogt,* 7 *N. J.* 1 (1951). See also *State v. Brown,* 22 *N. J.* 405 (1956). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. The literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole.

And in A–43 counsel would make the same distinction in "hit-and-run" cases between the surviving victims of the tortious act and the personal representatives and dependents of those who suffered fatal injuries; and for the selfsame reasons the division falls.

There is no significance in the omission from the proviso to section 5 of the phrase "* * * or the personal representative of such person * * *," associated in the opening sentence of the section with the words "Any qualified person * * *"; nor do the provisions of section 5 relating to the contents of the "late notice" suggest "an intentional omission of a personal representative in a death action from the proviso," such as concern only surviving claimants. This section, related to section 18, covers both the known and the unknown wrongdoer. The non-appointment of a personal representative by due form of law within the allotted statutory time for notice could not defeat the action. The widow here was plainly a "qualified" person to give the notice; certainly, the dependent minor children could not be barred of their right to invoke the benefit of the Fund by a failure of notice. The antecedent of "any such qualified person" in the proviso is the opening phrase of the section, "Any qualified person, or the personal representative of such person, * * *."

We are asked to read particular terms *in vacuo,* isolated from the context and the obvious reason and overall policy of the statute, as a measure of relief to all of the statutory class, to their dependents also if the injury be

fatal in its consequences. It was conceded on the oral argument that the Legislature did not design this proposed arbitrary and capricious classification, so obviously out of keeping with the general policy; the suggestion was that the deficiency is a *casus omissus* that only the Legislature can supply, reasoning that denies to the expression its evident sense and significance when read and assayed as a whole in the light of the evil and remedy in view. There can be no doubt of this. That which is clearly implied is as much a part of the law as that which is expressed. *Brandon v. Board of Com'rs of Town of Montclair,* 124 *N. J. L.* 135, 143 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940).

An amendment of section 18, *N. J. S. A.* 39:6–78, adopted after the commencement of these actions, reveals that such was the legislative sense of the original terms. It speaks of "any qualified person who would have a cause of action * * * in respect to death or personal injury * * *." Of this act, more hereafter.

And, for the reason given *supra,* it is not conclusive of noncompliance with section 18(*a*), *N. J. S. A.* 39:6–78(*a*) that Giles was "physically capable of giving the notice for almost [the first] half of the 30-day period even by his attending physician's testimony," since the statute "contemplates physical incapacity for the entire 30 days." It suffices to say that on this hypothesis Giles' disability began with his hospitalization on June 14, if not before, or so the Superior Court could have found, and no doubt did find. The statute does not provide for "tacking of the periods" of capacity.

Nor is there substance to the point that Giles failed of compliance with section 18(*e*), *N. J. S. A.* 39:6–78(*e*), in that he did not prove (a) the making of "All reasonable efforts * * * to ascertain the identity" of the "motor vehicle and the owner or owners thereof," and (b) that such identity could not be established.

There was evidence that Giles and his attorney fulfilled the statutory duty in this regard; and the finding

of full compliance made by the Superior Court is factually well grounded. Their efforts to this end were searching but futile. Giles made known to the police at the outset that a "hit-and-run" car driver was responsible for the mishap. And his attorney's inquiry was exhaustive, aided by a trained investigator.

The insistence that Giles did not establish that he "has a cause of action," section 18(d), N. J. S. A. 39:6–78(d), is equally untenable.

The argument is that under section 21, N. J. S. A. 39:6–81, making the Director answerable as a defendant, the "question of the existence of the alleged unknown automobile becomes res judicata once the Superior Court has granted leave to sue, pursuant to" section 18, N. J. S. A. 39:6–78, and "Although the director may contest the charge of negligence against the alleged car, he cannot dispute that such an automobile was present at the time claimed and that the question of the negligence of the unknown car is the issue involved." Reference is made to the statement of the trial judge in his opinion that "the plaintiff alleges, subject to proof at a later trial as to credibility to be passed on by a jury that an accident was caused by a black vehicle traveling in a northerly direction on Main Road * * *," and the conclusion that "the plaintiff has a cause of action against the operator or owner of a vehicle which is unknown to him at this time, or at least sufficient to present to a jury to be passed on * * *"; and it is said that they "are not consistent with the required determination provided for by the mandate of the statute," citing Elder's treatise supra, and that the evidence submitted by Giles was insufficient to justify the Superior Court "in conclusively determining that there was an unknown automobile involved in Giles' accident." It is urged that if such had not been the purpose, the Legislature "would have permitted a claim to be pressed for 'hit-and-run' cases by merely filing suit in the same manner as against known uninsureds and then required" proof as part of the plaintiff's

case that "the owner and operator of the car causing the accident was unknown and could not be ascertained."

But by *L.* 1956, *c.* 150, approved September 10, 1956, effective immediately, cited *supra,* section 18, *N. J. S. A.* 39:6–78, was amended to provide that in all such "hit-and-run" cases involving death or personal injury after April 1, 1955, "any qualified person who would have a cause of action against the operator or owner or both in respect to such death or personal injury  *  *  *  may bring an action therefor against the director in any court of competent jurisdiction, but no judgment against the director shall be entered in such an action unless the court is satisfied, upon the hearing of the action," of the fulfillment of all the preconditions laid down in the section before the amendment.

The amendment is a retroactive alteration of the mode of proceeding which suggests a legislative understanding of the preexisting provision in this respect quite at odds with the offered interpretation. Indeed, the distinction savors of the metaphysical, at variance with the policy of the act. Section 21 of the act, as it then was and is now, *N. J. S. A.* 39:6–81, provides that in such cases the Director "shall for all purposes of the action be deemed to be the defendant," and shall have available to him "all defenses" open to the operator or owner were they the defendants by due service of process. And the Director "shall be entitled to defend in all cases without asserting any specific facts."

Error is assigned upon the admission of the testimony given by the witnesses Delancey. But the objection goes to the weight rather than the competency of the evidence.

The judgments are severally affirmed.

No. A–42:

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—Justice OLIPHANT—1.

No. A–43:

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and JACOBS—6.

*For reversal*—None.