98 N.J. Super. 61 (1967)
236 A.2d 151
OTIS H. WHARTON, SR. AND MARY C. WHARTON, PLAINTIFFS-RESPONDENTS,
v.
FLOYD KNOX, DEFENDANT-RESPONDENT, AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD OF THE STATE OF NEW JERSEY, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1967.
Decided November 24, 1967.
*62 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. H. Hurlburt Tomlin argued the cause for appellant.
*63 Mr. P. Joseph Boyce argued the cause for plaintiffs-respondents (Mr. Salvatore J. Avena, attorney).
The opinion of the court was delivered by LEONARD, J.A.D.
This is an appeal by the Unsatisfied Claim and Judgment Fund Board (Board) from an order of the trial court directing the State Treasurer to pay plaintiffs' claims from the Fund.
On January 19, 1964 plaintiffs, residents of New Jersey, were involved in an automobile accident with defendant Floyd Knox, a resident of Philadelphia, Pa. On April 15, 1964 plaintiffs, alleging personal injury and property damages, instituted suit against Knox, who at the time of the accident was insured by Lawn Mutual Insurance Company, a Pennsylvania corporation not authorized to do business in New Jersey.
On March 22, 1965 the operations of Lawn Mutual were suspended by order of the Pennsylvania Insurance Commissioner, and on April 7, 1965 plaintiffs received notice of the insolvency of the carrier. Thereupon, on April 14, 1965 plaintiffs gave notice to the Board of their intention to file a claim against it. This notice was acknowledged on April 19, 1965, and on May 11, 1965 the Board advised plaintiffs that "[i]nasmuch as the Notice of Intention was not filed within 90 days after the accident no further action by the Fund is indicated."
On February 21, 1966 trial of the cause between plaintiffs and Knox was held. Judgment was entered in favor of plaintiff Otis H. Wharton, Sr. in the sum of $3,000 and in favor of plaintiff Mary C. Wharton in the sum of $2,000.
Subsequently, plaintiffs brought discovery proceedings against Knox but were unable to find any assets from which to satisfy their judgment claims. Plaintiffs then filed their petition for payment. Following a hearing thereon the order appealed from was entered.
The trial court, giving N.J.S.A. 39:6-65(b) a "liberal construction," determined that "the insolvency of the insurance *64 company was tantamount to a `disclaimer' as that term is used in our statute." It concluded that since plaintiffs gave notice to the Fund within 15 days of receiving notice of this "disclaimer," they were eligible to receive payment from it.
Involved herein is the construction of N.J.S.A. 39:6-65, which in pertinent part provides:
"Any qualified person * * *, who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle in this State on or after April 1, 1955, and whose damages may be satisfied in whole or in part from the fund, shall, within 90 days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, the form and contents of which shall be prescribed by the board, of his intention to make a claim thereon for such damages if otherwise uncollectible; provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment (a) that he was physically incapable of giving said notice within said period and that he gave said notice within 90 days after he became physically capable to do so or in the event he did not become so capable, that a notice was given on his behalf within a reasonable period, or (b) that he gave notice to the board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages. * * *"
The Board's primary contention is that the insolvency of Lawn Mutual cannot be construed as the equivalent of a disclaimer within the above statute. We disagree.
Although the particular point that the Board raises is one of novel impression, our courts have repeatedly held that our Unsatisfied Claim and Judgment Fund Law, N.J.S.A. 39:6-61 et seq., is designed to create and maintain a fund to provide a measure of relief for otherwise remediless persons who sustain losses or injuries inflicted by financially irresponsible or unidentified operators of motor vehicles. Moan v. Coombs, 47 N.J. 348, 351 (1966); Douglas v. Harris, 35 N.J. 270, 279 (1961). Taken as a whole, the act is to be liberally construed to advance the remedy *65 it affords. Although due regard must be given to the protection of the Fund against fraud and abuse, the statute should not be narrowly construed to prevent the fulfillment of the essential legislative policy it projects. Giles v. Gassert, 23 N.J. 22, 33-35 (1956). Thus, the "physically incapable" exception stated in N.J.S.A. 39:6-65(a) has been liberally construed to apply to a situation where "the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice." Giacobbe v. Gassert, 29 N.J. 421, 425 (1959). See also Greene v. Director of Div. of Motor Vehicles, 65 N.J. Super. 242 (App. Div. 1961), certification denied 35 N.J. 60 (1961).
Two out-of-state cases, Katz v. Americn Motorist Ins. Co., 244 Cal. App.2d 886, 53 Cal. Rptr. 669 (D. Ct. App. 1966), and Pattani v. Keystone Insurance Co., 426 Pa. 332, 231 A.2d 402 (Sup. Ct. 1967), although not on all fours with the issue here involved, are worthy of note. Neither California nor Pennsylvania has enacted an unsatisfied claim and judgment fund law, but both states have statutes requiring all automobile insurance policies issued within those jurisdictions to provide coverage to an insured who suffers damages caused by uninsured owners and operators of motor vehicles. Both of these cases involved application of those statutes to circumstances where an insurance company had gone insolvent.
In Katz the applicable statute defined an uninsured motor vehicle to include, inter alia, one on which coverage under a policy had been denied by the carrier. 53 Cal. Rptr., at pp. 671-672. There, the individual with whom plaintiff had been in an accident had been insured at the time of the collision. After plaintiff instituted suit against the other driver for damages, the latter's insurance carrier became insolvent and its affairs were placed in the hands of a rehabilitator. The court stated:
"[The California statute] is a part of a pattern of statutes which are `designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways *66 themselves suffer grave injury through the negligent use of those highways by others.' * * * Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own. * * *
The statutory objective is not attained by giving the injured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent `denies coverage' within the meaning of [the California statute] * * * and that plaintiff here is entitled to the protection afforded by the policy written by defendant with respect to uninsured motorists." 53 Cal. Rptr. at 672.
In Pattani the court quoted with approval from Katz and concluded that "insolvency of the tortfeasor's carrier occurring subsequent to the accident * * * constitutes a denial of coverage * * *." 231 A.2d, at p. 405.
As noted, Lawn Mutual was a Pennsylvania corporation not authorized to do business in this State, and defendant Knox was a resident of Philadelphia, Pa. Since no proof was adduced that his motor vehicle was "principally garaged in this State," plaintiffs cannot avail themselves of the benefits of our Motor Vehicle Liability Security Fund Act, N.J.S.A. 39:6-92 et seq. Thus, unless plaintiffs may have recovery against the Unsatisfied Claim and Judgment Fund, their judgments for their personal injury and property damages will remain unsatisfied save for whatever dividend they have the possibility of obtaining from the liquidation of the insurance company at some uncertain future date. To place these innocent injured plaintiffs in that position by a literal interpretation of the word "disclaimer" as used in N.J.S.A. 39:6-65(b) would be contrary to the intendment of our Unsatisfied Claim and Judgment Fund Law. To all intents and purposes the insolvency of the insurance company has caused the removal or withdrawal of liability insurance coverage for plaintiffs' claim against the tortfeasor Knox.
We disapprove of the logic employed in Uline v. Motor Vehicle Accident Indem. Corp., 28 Misc.2d 1002, 213 N.Y.S.2d 871 (Sup. Ct. 1961), upon which the Fund relies. Although recovery was denied in Uline under circumstances *67 strikingly similar to those before us here, the New York trial court's insistence on a strict construction of its statute, see 213 N.Y.S.2d, at p. 875, is contrary to the liberal policy established in our State as above noted.
Based upon all of the above we hold that the insolvency of Lawn Mutual was a "disclaimer" by it under N.J.S.A. 39:6-65(b). Since plaintiffs gave notice to the Board within 15 days of becoming aware of the carrier's insolvency, they are entitled to have their judgments satisfied from the Fund. In so concluding we note that the trial judge ordered plaintiffs to assign to the Board their judgments against Knox and their claims filed with the receiver of Lawn Mutual. We deem this proper.
Judgment affirmed.