102 N.J. Super. 59 (1968)
245 A.2d 232
MANNIE JOSEPH, PLAINTIFF,
v.
CLIFTON MOORE, ET AL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 31, 1968.
*61 Mr. Robert J. Sussman for plaintiff (Messrs. Rubin, Dolgoff & Sussman, attorneys).
Mr. Joel N. Werbel for defendant (Mr. Samuel A. Gennet, attorney; Mr. John D. Methfessel, on the brief).
TUMULTY, J.S.C.
This matter comes before the court on motion to order the State Treasurer to pay a "fair and equitable" settlement between plaintiff and defendant Clifton Moore and the Unsatisfied Claim and Judgment Fund, pursuant to N.J.S.A. 39:6-69, 70 and 71, involving interpretations of these provisions of N.J.S.A. 39:6-65:
"* * * that he [plaintiff] gave notice to the Board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages * * *" (Emphasis supplied)
The court makes the following findings of fact which, although not stipulated, are undisputed.
On March 2, 1965, at 10:42 A.M., while standing on Washington Street, Newark, New Jersey, plaintiff Mannie Joseph *62 was struck by a 1958 Chrysler driven by defendant Clifton Moore and owned by one Katherine Mavraides. Joseph sustained injures and was hospitalized as a result.
At noon of the same day, a report of the accident was submitted to the Newark Police Department, setting forth that the motor vehicle involved was a 1958 Chrysler and listing Moore as the driver.
On April 23, 1965 suit was instituted by plaintiff against Moore, defendant operator, and Katherine Mavraides, defendant owner. On May 1, 1965 Katherine Mavraides was served with a summons and complaint. On May 5, 1965 Moore was served with summons and complaint.
On May 5, 1965 plaintiff's attorney received a stipulation extending time to answer from DeCotiis & Morrison, which law firm had been assigned by Empire Mutual Insurance Company (Empire) to handle the defense of Clifton Moore and Katherine Mavraides. An answer was filed on June 14, 1965. Meanwhile, although he had prepared a notice of intention on May 19, 1965 for filing with the Unsatisfied Claim and Judgment Fund Board, plaintiff's attorney did not file it under the circumstances.
On or about August 9, 1965 plaintiff's attorney and all other parties were served with a notice of motion by DeCotiis & Morrison, returnable September 17, 1965. The notice was executed by DeCotiis & Morrison as "attorneys for Empire Mutual Insurance Company" rather than as "attorneys for Katherine Mavraides and Clifton Moore", as theretofore.
The notice stated that an order would be sought "relieving them as counsel for Katherine Mavraides" and permitting the Empire Mutual Insurance Company to withdraw from the defense of the above entitled matter." (Emphasis supplied). The grounds were that the answer filed on behalf of Katherine Mavraides was filed through "inadvertence and mistake concerning insurance coverage of the aforementioned Katherine Mavraides."
The 1958 Chrysler owned by Katherine Mavraides was the same car that struck plaintiff on March 2, but Empire *63 claimed that the Chrysler was not covered by her insurance policy with Empire. Empire claimed it had on March 2, 1965, insured, under the same policy, two motor vehicles belonging to her. The vehicles insured were a 1956 Buick four-door sedan and a 1955 Ford station wagon. These were the only automobiles owned by Katherine Mavraides which were specifically insured by Empire on the date of the accident.
Empire's claims records reveal that on May 12, 1965 an accident was reported to Empire as having occurred on March 2, 1965, between one Mannie Joseph (plaintiff) and Clifton Moore (defendant). Moore was reported (by Newark police report of March 2, 1965) as driving the Chrysler that belonged to Katherine Mavraides.
Immediately upon receiving the claim, Empire turned it over to the law firm of DeCotiis & Morrison, counsel for Empire, for defense and handling. Subsequent investigation revealed that the car involved in the accident and driven by Clifton Moore was a 1958 Chrysler. This latter vehicle, although owned by Katherine Mavraides, was not an insured vehicle under any policy placed with Empire, as subsequently discovered by it.
Prior to the accident Katherine Mavraides had instructed her husband to place the Chrysler with Clifton Moore's garage in Newark for repairs. After the repair work was completed Moore drove the Chrysler to a hardware store on Washington Avenue for the purpose of "purchasing a clamp" for use in the repair of another vehicle. After purchasing the clamp and reentering the car, the accident occurred between Moore and plaintiff.
Upon receipt of the foregoing notice of motion to withdraw, the attorney for plaintiff filed a notice of intention to make claim against the Unsatisfied Claim and Judgment Fund, which notice was received by the Fund August 16, 1965. The Notice was filed within 15 days of the notice of motion to withdraw (August 12, 1965) but more than 90 days from the happening of the accident. On January 4, *64 1966 an order was signed by Judge Kenarik, allowing the attorneys for Empire to be "relieved" as counsel for Clifton Moore and Katherine Mavraides.
Following this order, Empire sent a letter to Katherine Mavraides on January 17, 1966 by certified mail, notifying her of its withdrawal from her defense and insurance coverage, stating, among other things:
"* * * we are disclaiming coverage for an accident that occurred on March 2, 1965, between plaintiff Mannie Joseph and Clifton Moore, the said Moore allegedly driving an automobile revealed to be a 1958 Chrysler, serial no. LC33218 and allegedly belonging to Katherine Mavraides." (Emphasis supplied)
On February 28, 1966 another order was signed by Judge Glickenhaus, relieving the law firm of Clinton & Steinberg as attorneys for Clifton Moore due to his failure to cooperate and pay all fees, and ordering that a "true but uncertified copy of this order be sent to the Unsatisfied Judgment Claim Fund with a letter of explanation concerning this order and proceedings heretofore taken place."
On March 2, 1966 Irving Steinberg, counsel for Clifton Moore, sent a letter pursuant to Judge Glickenhaus' order, giving a detailed history of the litigation, including Empire's withdrawal from coverage of Katherine Mavraides, and Steinberg's own withdrawal as counsel to Moore.
On August 24, 1966 an order was entered permitting the law firm of Samuel A. Gennet (who had been retained by the Fund) to file an answer on behalf of Moore. The answer was filed. On May 27, 1967 another order, signed by Judge Conklin, was entered, dismissing the complaint against defendant Katherine Mavraides on the ground that, as a matter of law, no agency existed between her and Moore.
The only defendant left in the case is Moore, who (as stated before) had driven the Chrysler without Mavraides' permission on business of his own "to get a clamp for another car" on the day of the accident. Moore is not locatable at this time, despite attempts to subpoena him.
*65 Nonetheless, the attorneys for plaintiff and the Fund agreed to settle the case for $6,000, without costs. The settlement was approved by the Unsatisfied Claim and Judgment Fund Board of New Jersey.
This settlement was also confirmed by Judge Conklin, who reviewed the proceedings and found the settlement to be "fair and equitable." He ordered judgment to be entered against Moore in the amount of $6,000, without costs, with the proviso, "although said Fund has not at this time agreed to pay this sum". (Emphasis supplied). The judgment was entered on April 5, 1968.
Thereafter, application for payment of said amount was made on plaintiff's behalf by notice of motion, returnable before this court. The application, pursuant to N.J.S.A. 39:6-69, 70 and 71, sought on order directing the State Treasurer to pay plaintiff the $6,000 agreed upon in the court-approved settlement.
Plaintiff contends that he complied with all notice requirements of N.J.S.A. 39:6-65 by sending in a notice of intention to file suit within 15 days after having received the notice of motion to withdraw on the part of DeCotiis & Morrison, the attorneys assigned to Katherine Mavraides by Empire. The Fund objects to payment, denying compliance under N.J.S.A. 39:6-65.
A further issue in the case is plaintiff's contention that the Fund, by its conduct hereinbefore recited leading up to a court-approved settlement, is estopped from raising the defense of no disclaimer. The Fund denies it is so estopped, citing Danisi v. Theumling, 72 N.J. Super. 118 (App. Div. 1962).
As the facts in this case clearly demonstrate, Empire's notice of motion was one "to withdraw." The affidavit was entitled "Affidavit in Support of Motion to Withdraw." (Emphasis supplied). The order by Judge Kenarik on January 4, 1966 recited:
*66 "* * * it appearing that Empire Mutual Insurance Company does not afford insurance coverage to Katherine Mavraides or Clifton Moore.
It is on this 4th day of January, 1966
ORDERED that the firm of De Cotiis & Morrison be relieved as counsel for Clifton Moore and Katherine Mavraides * * *"
Also, it is evident that Empire treated the withdrawal as a "disclaimer," when it (in the person of Irving Goodman, claims manager, affiant in Empire's motion to withdraw) wrote to Katherine Mavraides on January 17, 1966, stating, in part:
"* * * We therefore advise you that we are disclaiming coverage for an accident that occurred on March 2, 1965 between plaintiff Mannie Joseph and a Clifton Moore, the said Moore allegedly driving an automobile revealed to be a 1958 Chrysler * * * and allegedly belonging to Katherine Mavraides." (Emphasis supplied)
In Ebert v. Balter, 83 N.J. Super. 545 (Cty. Ct., 1964), the court said:
"Broadly speaking, an insurer who, with knowledge of the facts, assumes and conducts the defense of an action outside the coverage of the policy, cannot later disclaim liability by establishing the non-coverage. Cook v. Preferred Accident Insurance Co., 114 N.J.L. 141, 144 (E. & A. 1935). However, the insurer, having a duty to defend even groundless suits, has an immediate right and duty to make such investigation as is reasonably necessary to determine the facts in connection with the claim as well as any possible defense. Such an investigation does not waive any defense the insurer might have under the policy. Kloidt v. Metropolitan Life Insurance Co. 18 N.J. Misc. 661, 672 (Sup. Ct. 1939). The carrier must seek the facts with reasonable diligence and make its determination to perform or withdraw from the action within a reasonable period under the circumstances. Merchants Indemnity Corp. of New York v. Eggleston, 37 N.J. 114, 131 (1962); O'Dowd v. United States Fidelity & Guaranty Co., 117 N.J.L. 444, 451 (E. & A. 1937); 7A Appleman, Insurance Law and Practice, sec. 4693, p. 529 (1962)." (at p. 553, emphasis supplied)
The facts herein reveal a "disclaimer" of liability from existing coverage and a withdrawal thereof, as admitted in the Goodman letter. The present situation is unlike *67 that which faced the court in Krouner v. Motor Vehicle Accident Indemnification Corp., 23 App. Div.2d 711, 257 N.Y.S.2d 325 (App. Div. 1965), because here, the insured, Katherine Mavraides, was at fault in that she failed to notify Empire that she had purchased the Chrysler to replace the Ford under her policy of insurance. In any event, a disclaimer need not be due to some fault of the insured alone. It may be due to subsequent actions on the part of the insurance company itself, such as bankruptcy. See Pattani v. Keystone Insurance Co., 426 Pa. 332, 231 A.2d 402 (Sup. Ct. 1967); also McCaffery v. St. Paul Fire Insurance Company, N.H., 236 A.2d 490 (Sup. Ct. 1967), and cases cited therein.
Furthermore, from the article entitled "Unsatisfied Judgment Fund Legislation in the United States and Canada," by Richard H. Folmar of the New Mexico Legislative Council Service, dated January 1, 1960, the following may be gleaned:
"* * * The 90-day provision may also be waived if the person proves to the court that he gave notice to the board within 15 days after he had been informed the insurer for the defendant had disclaimed on a policy so as to withdraw liability insurance coverage. Similar waiver provisions may be found in the laws of Maryland and New York. In the absence of any extenuating circumstances, failure to file the notice of intention after the accident will usually act as a bar to any future recovery from the fund." (Emphasis supplied)
The facts also indicate plaintiff suffered a fracture of the left leg and is a member of the class designed to receive the benefits of this legislation. He ought not to be made the victim of circumstances over which he had no control. Such was not the intention of the Legislature.
The legislative policy of this section of the law, N.J.S.A. 39:6-65, may be found on the original Assembly Bill 422, subsequently adopted into law, as seen from the following statement:
*68 "The purpose of this bill is to increase payments to accident victims of uninsured drivers; to eliminate inequities and objectionable features that have appeared in the Unsatisfied Claim and Judgment Fund Law after 3 years of operation; to expedite payment of claims that have been settled; and to place on the uninsured motorist, who creates the problem, the principal burden of supporting the fund." (Emphasis supplied)
This legislative intent is further supported by the Report of the New Jersey Unsatisfied Claim and Judgment Fund Board (1959), in which it was stated:
"3. R.S. 39:6-65 was also changed to permit a claimant to file a Notice of Intention within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim." (at p. 11)
In view of the foregoing, the question of estoppel need not be decided. The Fund's position, in objecting to its own settlement, makes of the settlement a meaningless charade.
The Fund, in its charade, urges the principle of Parrot v. Chiselko, 74 N.J. Super. 138 (App. Div. 1962), that quoting: "One cannot withdraw or remove a thing which never existed" (at p. 146). On the other hand, one does not ask a court to relieve one of a nonexistent burden.
However, the court deems it unnecessary to pass on the question of estoppel at this time, having found compliance with the statute, N.J.S.A. 39:6-65 on the facts of this case.
I also find as a fact that the letter of January 17, 1966 was first made known to the parties when it was produced in answer to the court's order. Thus, there is an absence of fraud or collusion (as to plaintiff having influenced the contents of such letter) because plaintiff was totally unaware of such letter until after the court ordered Empire to produce its entire file (the hearing of June 14, 1968). Thereafter, the court permitted counsel to inspect the documents.
In conclusion, as the court said in Giacobbe v. Gassert, 29 N.J. 421 (1959):
*69 "It is the obvious reason of a law that gives it life, not the strict literal sense of terms. * * * And here the statutory relief is to be accorded to all who are within the given class, as a peremptory measure of social policy; and the notice is designed to afford a timely inquiry and thus to safeguard the fund against fraud and imposition. * * *" (at p. 425).
The admonitions of Giacobbe are all heeded according to the facts in this case. Thus, the Fund should honor its own settlement which it agrees is equitable and fair.
Motion granted.