605 A.2d 261

KENNETH MATTHEWS, PLAINTIFF–RESPONDENT, v. HENRY READY AND PATRICIA ZOMIES, DEFENDANTS.

(UNSATISFIED CLAIM AND JUDGMENT FUND, APPELLANT).

Superior Court of New Jersey
Appellate Division

Argued March 9, 1992—Decided April 3, 1992.

Before Judges J.H. COLEMAN and STERN.

*Rose Mary Marella* argued the cause for appellant (*Tomlin, Clark and Hoplin,* attorneys).

*John F. Strazzullo* argued the cause for respondent.

The opinion of the court was delivered by

STERN, J.A.D.

This appeal requires us to decide if a pedestrian injured by an uninsured vehicle can collect benefits from the Unsatisfied Claim and Judgment Fund (the Fund) if the notice of claim is filed within 15 days of discovery that insurance coverage had been canceled prior to the accident for non-payment of a premium. We must decide the issue in circumstances where plaintiff relied upon a police report which included information that the vehicle was insured, apparently obtained from the insurance identification card produced by the driver.

On September 13, 1986 while walking near the intersection of 27th Street and Sherman Avenue in Camden, plaintiff was injured when struck by a vehicle owned by defendant Henry Ready and driven by defendant Patricia Zomies. After striking

plaintiff, the vehicle left the scene, but witnesses apparently observed the plate number, and the car was located shortly thereafter.[1] In any event, a police accident report was prepared in which all relevant information was noted. The report included a description of the vehicle, the governing policy, "JUA 402–2146", and the carrier identification number "227." Apparently, the investigating officer obtained the insurance information by review of the insurance identification card produced by the driver.

On March 12, 1987 plaintiff's counsel wrote Ready's carrier, National Surety Corporation of California, asking it to "acknowledge coverage." In the absence of a response, on April 23, 1987 plaintiff's counsel wrote to the carrier's parent insurer, the Fireman's Fund Insurance Companies (Fireman's), making the same request. By letter dated June 1, 1987 a representative of the Fireman's wrote plaintiff's counsel that "[a]ccording to Mr. Ready's agent, Anderson Agency, this insured was canceled on August 25, 1986 for automobile coverage. The reason for cancellation was non-payment of premium."

Within fifteen days of receipt of Fireman's letter (and 15 days after it was dated), by letter dated June 16, 1987 counsel for plaintiff wrote to the UCJF Board detailing the background and requesting it to "consider this letter as my client's notice of intention to make claim against" the Fund. There was no response to this "notice." The record contains a return receipt, and there is no present contest addressed to the date of mailing or receipt.[2] The parties before us have treated the "notice" as

---

[1]These facts developed essentially from the pleadings and motion papers are not disputed for purposes of this appeal.

[2]Plaintiff's counsel certified that the Fund examiner told him it was "unknown" as to why the notice was "ignored." There is correspondence in the record between the Fund and plaintiff's counsel regarding whether notice and copies of service required to be served under *N.J.S.A.* 39:6–65 were, in fact, dispatched to the Fund. On this appeal no issue is raised concerning the essential facts as we detail them. As noted hereafter, in her certification to

having been mailed within 15 days of receipt of the carrier's letter of June 1, 1987 advising that there was no coverage.

On August 29, 1988 plaintiff filed suit against Ready and Zomies, with notice to the Fund. Ready could not be served. Zomies was served but defaulted. A proof hearing was thereafter conducted on notice to the Fund. (The judgment states it occurred on October 19, 1989, but plaintiff tells us it was further adjourned until November 13, 1989). By order dated November 13, 1989 judgment was entered against Zomies in the amount of $12,000.00 together with pre-judgment interest of $916.59.

By motion filed April 19, 1990 counsel for the Fund moved on behalf of Zomies to vacate the default judgment. Counsel certified that the file was received from GAB Business Services on April 3, 1990, that no "timely notice of claim" was filed with the Fund and that there was "a meritorious defense." She specifically certified that notice was not given until June 16, 1987 "approximately nine (9) months after the accident ... [and] that there was no 'disclaimer on a policy of insurance by an insurance company.'" Finally, counsel asserted "good cause", "excusable neglect" and "good faith" in seeking to vacate the default. After argument the motion was denied by an undated order in May of 1990. Thereafter, plaintiff moved for an order requiring payment from the Fund. Judge Samuel L. Supnick granted the motion after argument on May 17, 1991. The Fund now appeals from the judgment of June 18, 1991, ordering it to pay plaintiff $12,000, "together with costs to be taxed and post-judgment interest in the amount of $1444.99 as of May 1, 1991."

The issue before us turns on whether Fireman's letter of June 1, 1987 constituted a "disclaimer" within the meaning of *N.J.S.A.* 39:6–65, for purposes of permitting notice within 15

---

vacate default, counsel for the Fund acknowledged notice was received on June 16, 1987.

days of its receipt. If it constituted a "disclaimer" the notice was timely even though filed more than 90 days after the accident. We hold in these circumstances that the letter constituted a "disclaimer."

*N.J.S.A.* 39:6–65 provides that:

> Any qualified person, or the personal representative of such person, who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance or use of a motor vehicle in this State ... whose damages may be satisfied in whole or in part from the fund, shall ... within 90 days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, the form and contents of which shall be prescribed by the board, of his intention to make a claim thereon for such damages if otherwise uncollectible; provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of the application for the payment of a judgment ... (b) that he gave notice to the board within 15 days of receiving notice that an insurer had *disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage* for his claim against a person or persons who allegedly caused him to suffer damages. (emphasis added)

Judge Supnick found that "the plaintiff ... had a right to rely upon the fact that there was insurance" because of the information contained in the police report, including the "insurance company code number." He further noted that "the notice ... given by [plaintiff's] counsel to the state essentially conforms or complies with the requirements of the statute, even though it was not in the form that the board itself requires." Judge Supnick, thus, concluded "that the plaintiff ha[d] complied with the statute" and entered "an order directing payment of the judgment."

The Fund contends now, as it did in the Law Division, that Fireman's notice of cancellation of co-defendant Ready's liability insurance does not constitute a "disclaime[r]". It points to the plain wording of the statute which equates a "disclaimer" with the "remov[al] or withdraw[al]" of insurance but for which "a valid policy of insurance would subsist." *See Parrot v. Chiselko,* 74 *N.J.Super.* 138, 146, 180 *A.*2d 710 (App.Div.1962). In *Parrot* we said that "[o]ne cannot *withdraw* or *remove* a thing which never existed." *Id.* (emphasis in original). Thus, the Fund argues Ready had no liability insurance to be "dis-

claime[d]" because he had no insurance. However, Ready did have insurance which had been canceled before the accident, whereas in *Parrot* the insured's coverage had not come into effect by the time of the accident.

The Fund's position is also supported by *Danisi v. Thuemling*, 72 *N.J.Super.* 118, 124, 178 *A.*2d 26 (App.Div.1962), where we rejected plaintiff's claim "that under a liberal construction of the act, the 90–day period began to run from the time he found out that [the operator's] representation as to insurance was untrue." We there said that ". . . this is not what *N.J.S.A.* 39:6–65 provides. It specifies that the notice shall be given 'within 90 days after the accident'. To adopt the statutory interpretation the plaintiff urges would render the 90 day provision meaningless." *Id.*

However, *Danisi* does not control. It did not involve any legitimate basis for plaintiff's reliance, such as here where the insurance card was presented. Rather, there the operator merely stated his boss "got insurance." Moreover, the date of the accident in *Danisi* was clearly ascertainable for purposes of the 90 day notice provision. Here we do not deal with interpretation of the word "accident", but with the meaning of the word "disclaimer." There is no present contention that the notice wasn't made within 15 days of receipt of the letter from Fireman's Fund.

The time limitations embodied in *N.J.S.A.* 39:6–65 have never been read literally to prevent injustice. In *Giacobbe v. Gassert*, 29 *N.J.* 421, 149 *A.*2d 214 (1959), the Supreme Court held that a "hit and run" accident victim gave timely notice to the Fund notwithstanding the fact that it was dispatched more than 90 days after the accident. The Court concluded that the victim's physical and mental condition justified treating a claim beyond the statutory period as timely. With significant relevance here, the Court stated:

It is the obvious reason of a law that gives it life, not the strict, literal sense of terms. The words may be expanded or limited according to the spirit of the legislative expression. The animating principle of the correlated symbols of expression prevails over the import of particular words and phrases, considered

*in vacuo* or in the context of other and different circumstances. The whole is to be coordinated and fulfillment of the overriding plan and purpose; the procedural course is not an end in itself but a mechanism in aid of the substantive policy....

... the act is to be liberally construed to advance the remedy, due regard being had for the protection of the fund and the realization of the essential legislative design; and to this end suffices if, because of the physical injuries and their treatment and pre-occupation with his affliction and fear of evil consequences, the victim of the mishap was not mentally and emotionally adjusted to his responsibility of giving notice ... Plaintiff acted in the utmost good faith; he did not willfully default in his obligation, and the fund has not been prejudiced; its administrators have not been disadvantaged in the execution of the statutory policy. [*Id.* at 425–426, 149 *A.*2d 214].

*See also Giles v. Gassert*, 23 *N.J.* 22, 33–35, 127 *A.*2d 161 (1956).

Relying, in part, upon this quotation the Law Division has held that the giving of notice within 15 days of receipt of a motion by a carrier's attorney to withdraw although filed more than 90 days after the accident, was timely. *See Joseph v. Moore, et al.*, 102 *N.J.Super.* 59, 245 *A.*2d 232 (Law Div.1968). Further in an analogous situation, we have held that a plaintiff's notice filed within 15 days of receipt of a notice of insolvency of the defendant's carrier was timely, notwithstanding the fact that it was not filed within 90 days of the accident. *Wharton v. Knox and U.C. and J.F. Board*, 98 *N.J.Super.* 61, 236 *A.*2d 151 (App.Div.1967). In so holding we stated:

... our courts have repeatedly held that our Unsatisfied Claim and Judgment Fund Law, *N.J.S.A.* 39:6–61 *et seq.*, is designed to create and maintain a fund to provide a measure of relief for otherwise remediless persons who sustain losses or injuries inflicted by financially irresponsible or unidentified operators of motor vehicles. *Moan v. Coombs*, 47 *N.J.* 348, 351 [221 *A.*2d 10] (1966); *Douglas v. Harris*, 35 *N.J.* 270, 279 [173 *A.*2d 1] (1961). Taken as a whole, the act is to be deliberately construed to advance the remedy it affords. Although due regard must be given to the protection of the Fund against fraud and abuse, the statute should not be narrowly construed to prevent the fulfillment of the essential legislative policy it projects. *Giles v. Gassert*, 23 *N.J.* 22, 33–35 [127 *A.*2d 161] (1956). [*Id.* 98 *N.J.Super.* at 64–65, 236 *A.*2d 151].

As we said in *Wharton*, to prohibit injured plaintiffs from recovery "by a literal interpretation of the word 'disclaimer' as used in *N.J.S.A.* 39:6–65(b) would be contrary to the [intent] of our Unsatisfied Claim and Judgment Fund Law." *Id.* at 66, 236 *A.*2d 151. Thus, in *Wharton* we concluded that

for "all intents and purposes the insolvency of the insurance company has caused the removal or withdrawal of liability insurance coverage for plaintiffs' claim against the tort-feasor...." *Id.* Hence we held that the insolvency of defendant's carrier was a "disclaimer" for purposes of *N.J.S.A.* 39:6-65(b). *Id.* at 67, 236 *A.*2d 151. Other exceptions or caveats have been developed by judicial decision to enlarge the 90 day requirement. *See Giacobbe v. Gassert, supra; see also Wilkins v. Smith,* 181 *N.J.Super.* 121, 124-126, 436 *A.*2d 951 (App.Div.1981); *Moore v. Truesdale,* 48 *N.J.Super.* 257, 137 *A.*2d 433 (App.Div.1958) (accident during injured plaintiff's infancy).

We agree with the holding of *Parrot* because there defendant had no coverage prior to or at the time of the accident. Here, however, it is undisputed that there was coverage prior to the accident, and that it was terminated for non-payment of a premium. Nevertheless, as of the time of the accident, defendant continued to possess an insurance identification card which permitted plaintiff and his attorney reasonably to believe there was coverage as of the date of the accident. To require every automobile accident victim to file a notice with the Fund within 90 days of the accident merely to avoid the possibility that the insurance coverage had been terminated between the time the card was issued and the date of the accident would put an unreasonable burden on the victim and an equally unreasonable administrative expense on the Fund. *Parrot* and *Danisi, supra,* decided before adoption of both our "No Fault" and Compulsory Motor Vehicle Insurance laws, *see N.J.S.A.* 39:6A-1 *et seq.; N.J.S.A.* 39:6B-1 *et seq.,* involved no required identification card on which the innocent victim could rely in terms of ascertaining if there was, in fact, coverage at the time of the accident. *See N.J.S.A.* 39:6B-2. And here the police investigation report indicated, by reference to the same card, the existence of coverage.

▪ Under the circumstances where the plaintiff relied upon the police report incorporating the name of a carrier and

indicating insurance coverage, we affirm the conclusion that there has been timely notice to the Fund. However, under the same set of circumstances, we also believe that the Fund's motion to vacate default (denied by another judge prior to the proceedings before Judge Supnick) should have been granted, so that the Fund has the opportunity to investigate the claim and defend on the merits. There was a good faith contest at the time regarding whether the requirements of initial notice and of notice to "the board of any action thereafter instituted for enforcement of such claim," *N.J.S.A.* 39:6–65, was timely given. While the Fund before us has properly and commendably indicated the absence of any factual dispute concerning the date on which notice was received by it in June, 1987, it has not abandoned its claim that default should be vacated because of the dispute regarding other subsequent statutory notices or because its conduct was in good faith. Under the circumstances, we affirm Judge Supnick's order upholding the notice to the Fund as timely, but reverse the prior order of another judge denying the Fund the opportunity to vacate the default.

We remand for further proceedings consistent with this opinion.